AMERICAN STATES INSURANCE COMPANY v AUTO CLUB INSURANCE ASSOCIATION

PROGRESSIVE INSURANCE COMPANIES v AUTO CLUB INSURANCE ASSOCIATION

Docket Nos. 119829, 119830, 119831, 119832. Submitted March 5, 1991, at Detroit. Decided December 19, 1991; approved for publication March 11, 1992, at 9:10 A.M. Leave to appeal denied, 440 Mich 863.

American States Insurance Company and Progressive Insurance Companies brought actions in the Wayne Circuit Court against Auto Club Insurance Association, seeking a declaration regarding Auto Club's duty to reimburse them for sums expended in defending their insureds in an underlying action arising out of an automobile accident. The vehicle involved was owned by Manucor Leasing, Inc., and was leased to Barry Figel. The trial court, Michael L. Stacey, J., consolidated the actions and granted Auto Club's motion for summary disposition, holding that there was no genuine issue of material fact that, before the accident, Auto Club had canceled the no-fault automobile insurance policy it had issued to Barry Figel and his wife, Diana, and that Auto Club therefore had no duty in the underlying action to defend Diana Figel, the driver of the vehicle at the time of the accident. American States and Progressive appealed, and their appeals were consolidated.

The Court of Appeals *held:*

1. Section 3020 of the Insurance Code, MCL 500.3020; MSA 24.13020, governs the method by which notice of cancellation of the Figels' insurance was to have been made. The form of the notice of cancellation sent to the Figels and Manucor Leasing by Auto Club complied with the requirements of § 3020. Although the notices referred to insurance coverage for the Figels' Buick Regal and Pontiac Grand Am, not the Pontiac 6000 that was later involved in the accident, the Figels' did not substitute the Pontiac 6000 for the Grand Am until two weeks after notice of cancellation had been sent to them. Section 3020

REFERENCES

Am Jur 2d, Automobile Insurance §§ 36, 38.

See the Index to Annotations under Automobile Insurance; No-Fault Insurance.

does not require that additional notice of cancellation be sent upon a substitution of vehicles.

2. Auto Club's mailing of the cancellation notices to the Figels by first-class mail was sufficient to establish prima facie proof of notice pursuant to the presumption established in § 3020(3). The burden was on the nonmoving parties to rebut the presumption of notice and establish the existence of a material factual issue whether the Figels were given actual notice. The Figels' deposition testimony did not overcome the presumption of notice or create a genuine issue of material fact upon which reasonable minds could differ.

Affirmed.

1. INSURANCE — NO-FAULT — CANCELLATION OF INSURANCE — NOTICE — SUBSTITUTION OF VEHICLES.

Actual notice of cancellation of a no-fault automobile insurance policy must be received by the insured at least ten days before the effective date in order for the insurer's cancellation of the insurance to be effective; an insurer is not required to give additional notice of cancellation to the insured where the insured substitutes vehicles during that period (MCL 500.3020; MSA 24.13020).

2. INSURANCE — NO-FAULT — CANCELLATION OF INSURANCE — NOTICE — PRIMA FACIE PROOF OF NOTICE.

An insurer's mailing of notice of cancellation of a no-fault automobile insurance policy to its insured by first-class mail is prima facie proof of notice of cancellation (MCL 500.3020[3]; MSA 24.13020[3]).

*Plunkett & Cooney, P.C.* (by *Robert G. Kamenec*), for Progressive Insurance Companies.

*Gross & Nemeth* (by *James G. Gross*), for Auto Club Insurance Association.

*Miller & Berg, P.C.* (by *Carole R. Chase*), for Diana Figel.

*Holahan, Malloy, Maybaugh & Monnich* (by *Mary J. Diegel* and *Maureen Holahan*), for American States Insurance Company.

Before: McDONALD, P.J., and MacKENZIE and WAHLS, JJ.

PER CURIAM. These consolidated appeals arise from two declaratory judgment actions brought in the Wayne Circuit Court to determine questions of insurance coverage and defense that arose from an accident involving a 1987 Pontiac 6000. The vehicle was owned by Manucor Leasing, Inc., and leased by Barry Figel. Figel's spouse, defendant Diana Figel, was driving the vehicle when she struck Nicole Bethell, a minor. Bethell brought an action against Diana Figel, whom defendant Auto Club Insurance Association refused to defend and indemnify, and Manucor Leasing. Diana Figel was defended by American States Insurance Company under an executive umbrella policy, while Manucor Leasing was defended by its insurer, Progressive Insurance Companies. American States and Progressive then brought these actions for declaratory judgment against Auto Club, seeking reimbursement for sums expended in defending their insureds. After the insurers' actions were consolidated below, the trial court granted Auto Club's motion for summary disposition, holding that there was no genuine issue of material fact that, before the accident, Auto Club had canceled the no-fault automobile insurance policy it had issued to the Figels and that Auto Club therefore had no duty to defend Diana Figel. Thereafter, the trial court determined the rights and liabilities of American States and Progressive to defend Diana Figel under their respective policies. These consolidated appeals as of right followed.

Barry and Diana Figel obtained insurance from Auto Club for a 1986 Buick Regal and a 1987 Pontiac Grand Am on September 26, 1986. Auto Club later learned that Diana Figel's driving record precluded the issuance of a standard policy. On October 31, 1986, Auto Club sent two cancellation notices, one for each vehicle, to the Figels by

certified mail, return receipt requested. The no-
tices stated that the cancellation would be effective
on December 1, 1986. The certified mailings were
returned unclaimed. Copies of the notices were
then sent to the Figels by first-class mail. A short
computer-generated notice concerning the Grand
Am was sent to the Figels in the first week of
November 1986. On November 14, 1986, the Figels
substituted the Pontiac 6000 for the Grand Am
under the policy's coverage. Manucor Leasing re-
ceived a letter from Auto Club on January 14,
1987, that informed it that the Figels' policy had
been canceled. The accident involving the Pontiac
6000 occurred on February 5, 1987.

The first question we must resolve is which of
two sections of the Insurance Code, § 3020 or
§ 3224, governs the method by which notice of
cancellation to the Figels should have been given.
MCL 500.3020; MSA 24.13020 and MCL 500.3224;
MSA 24.13224. The trial court held, on the clear
authority of *Citizens Ins Co of America v Cren-
shaw,* 160 Mich App 34; 408 NW2d 100 (1987), app
dis 430 Mich 888 (1988), that § 3020 controlled. We
agree.

American States does not directly argue that
*Citizens Ins* was wrongly decided, but rather that
§ 3224 controls where cancellation is sought during
the first fifty-five days of coverage, as is the case
here. Progressive does argue that the holding in
*Citizens Ins* was erroneous, but suggests the same
application of § 3224 argued by American States.
Both parties rely upon OAG, 1981-1982, No 5966, p
326 (August 19, 1981), for this proposition. We
believe the Attorney General's opinion to be incor-
rect. See *Citizens Ins, supra* at 38-39; *Dorsey v
Michigan Mutual Liability Co,* 72 Mich App 607,
610-611; 250 NW2d 143 (1976). Nothing in § 3224
limits the application of its twenty-day notice re-

quirement to the fifty-five-day period. Rather, the "conflict" between § 3224 and § 3020 is more basic; which governs the method of cancellation of no-fault automobile policies? We agree with *Citizens Ins, supra,* and hold that § 3020 applies. We further note that the notice requirement of § 3224(2) is expressly limited to "the provisions of this chapter only," that is, the chapter of the Insurance Code that governs the cancellation of automobile liability policies. The no-fault insurance act is found in the chapter of the Insurance Code that concerns motor vehicle protection. *Id.* Section 3020, on the other hand, applies to all "[policies] of casualty insurance, except worker's compensation, including all classes of motor vehicle coverage."

We next consider whether the form of notice sent by Auto Club complied with the requirements of § 3020. At the time of the accident, § 3020 provided, in pertinent part:

> (1) A policy of casualty insurance, except worker's compensation, including all classes of motor vehicle coverage, shall not be issued or delivered in this state by an insurer authorized to do business in this state for which a premium or advance assessment is charged, unless the policy contains the following provisions:
>
> * * *
>
> (b) That the policy may be canceled at any time by the insurer by mailing to the insured at the insured's address last known to the insurer or an authorized agent of the insurer, with postage fully prepaid, a 10 days' written notice of cancellation with or without tender of the excess of paid premium or assessment above the pro rata premium for the expired time. . . .
>
> * * *
>
> (3) Cancellation as prescribed in this section shall be without prejudice to any claim originating

before the cancellation. *The mailing of notice shall be prima facie proof of notice.* Delivery of written notice shall be equivalent to mailing.

(4) A notice of cancellation, including a cancellation notice under section 3224, *shall be accompanied by a statement that the insured shall not operate or permit the operation of the vehicle to which notice of cancellation is applicable, or operate any other vehicle, unless the vehicle is insured as required by law.* [Emphasis added.]

Both Progressive and American States argue that the October 31, 1986, notices of cancellation sent by certified mail (and, presumably, the copies later sent by first-class mail) were deficient in that they referred to insurance coverage for the Buick Regal and the Pontiac Grand Am, not the Pontiac 6000 that was later involved in the accident. MCL 500.3020(4); MSA 24.13020(4). The parties concede that reference to the Pontiac 6000 could not have been made on October 31, because Barry Figel did not substitute that vehicle for the Grand Am until two weeks later. Nonetheless, Progressive and American States argue that a strict reading of § 3020(4) requires that a specific reference to the Pontiac 6000 be made in order for the notice of cancellation to be effective. Auto Club replies that notices of cancellation cancel insurance, not automobiles. We agree. Although the computer-generated notices stated only that the Figels' insurance was being cancelled, the other notices sent, in addition to listing the Regal or the Grand Am, stated: "Remember, you may not operate, or permit the operation of the above vehicles, *nor may you operate any other vehicle,* unless that vehicle is insured as required by law." See § 3020(4). Auto Club states that it had no right to refuse the substitution of vehicles under the policy while it was in effect, and there is no argument to the

contrary. Nothing in § 3020 requires that additional notice of cancellation be sent upon a substitution of vehicles, and we do not believe that it can be argued seriously that the notice of cancellation, given because of Diana Figel's poor driving record, can be rendered defective by a postnotice, unilateral substitution of vehicles by the insured. We hold that the form of notice given by Auto Club was effective under § 3020. For the same reasons, we also hold that the form of notice sent to Manucor Leasing was effective. Auto Club's affidavit swore that copies of the notice concerning the Grand Am, which included the statement that the Grand Am or any other vehicle could not be operated unless insured, were sent to Manucor Leasing by first-class mail.

Progressive and American States also argue that a genuine issue of material fact, whether the Figels were given actual notice of cancellation, precluded the grant of summary disposition for Auto Club pursuant to MCR 2.116(C)(10). Actual notice of cancellation must be received by the insured before the cancellation is effective. See, e.g., *Citizens Ins, supra* at 37-38; *Citizens Ins Co of America v Lemaster,* 99 Mich App 325, 328; 298 NW2d 19 (1980). An insurer's burden to prove such notice, however, is aided considerably by the presumption established by § 3020(3) that mailing of notice is prima facie proof of notice. *Celina Mutual Ins Co v Falls,* 72 Mich App 130, 136; 249 NW2d 323 (1976). Progressive and American States do not dispute the fact that notice was mailed by Auto Club, but, in an attempt to overcome the presumption provided in § 3020(3), argue that the Figels' deposition testimony created an issue of fact because the Figels denied having received the notice. We disagree.

According to an affidavit filed by Auto Club,

notices of cancellation were sent to Barry Figel by certified mail, then by first-class mail. The mailing of notice by first-class mail was sufficient to establish prima facie proof of notice. MCL 500.3020(3); MSA 24.13020(3). The burden was thus on the nonmoving parties to rebut the presumption of notice and establish the existence of a material factual issue. *Good v DAIIE,* 67 Mich App 270, 273-274; 241 NW2d 71 (1976).

American States and Progressive argue that, at her deposition, Diana Figel denied receiving the notices. Our review of the transcript shows this to be an exaggeration. Diana Figel testified that she had not seen the notice of cancellation that pertained to the Buick (as opposed to the Pontiacs), could not confirm that the October 31 notices were not received at her house, and that she could only guess with regard to insurance matters because her husband handled such things. Even when viewed in a light favorable to the nonmovants, Diana Figel's testimony was that she had no knowledge of whether notice had been received.

Progressive also argues that receipt of notice was denied by Barry Figel. This, too, is an exaggeration. The only testimony in that regard identified by Progressive in its appellate brief concerns Barry Figel's denial of having received the computer-generated notices. Auto Club's affidavit, however, swore that notice had also been sent by first-class mail. Our further review of the deposition transcript shows no other concrete denial of notice. Rather, Barry Figel testified that he "did not recall" receiving notice from Auto Club, that he was aware of the certified letters but refused to pick them up, and that he did not recall whether he had ignored other letters that had come to his home. We hold that the Figels' deposition testimony did not overcome the presumption of notice

and did not create a genuine issue of material fact upon which reasonable minds could differ.

Finally, Progressive arguing that Auto Club is estopped from denying coverage, asks: "How could a reasonably prudent policyholder believe anything but continuing coverage—when the insurer affirmatively makes a change in the policy to add an automobile, which is subsequently involved in an automobile accident?" Although this issue was raised below, it was not decided by the trial court and is not preserved for review. *Joe Dwyer, Inc v Jaguar Cars, Inc,* 167 Mich App 672, 685; 423 NW2d 311 (1988). No miscarriage of justice will result if we do not consider it. In particular, we note that the Figels, not Auto Club, substituted the Pontiac 6000 for the Pontiac Grand Am between the time the notices of cancellation were sent and the date of cancellation, and Progressive does not contest Auto Club's assertion that it had no right to deny the Figels' request for substitution during this period.

In light of our disposition of the above issue, we need not address Progressive's final issue concerning the priority of coverage.

Affirmed.