KIVELA v DEPARTMENT OF TREASURY

Docket No. 138738. Submitted January 7, 1993, at Lansing. Decided July 6, 1993, at 9:40 A.M. Leave to appeal sought.

Diane Kivela filed a petition in the Michigan Tax Tribunal challenging a jeopardy assessment for unpaid sales, use, income, and single business taxes issued by the Michigan Department of Treasury on the basis of financial records relating to the purchase and sale of marijuana uncovered in a police search of her home. Before the petition was filed in the Tax Tribunal, a charge against the petitioner of possession with intent to deliver marijuana was dismissed by the Detroit Recorder's Court following a ruling that the search of the home and the seizure of the evidence violated the Fourth Amendment. On cross-motions for summary disposition, the Tax Tribunal ruled in favor of the department. The petitioner appealed.

The Court of Appeals *held:*

1. A jeopardy assessment may not be based on unlawfully seized evidence, nor may an unlawful search and seizure serve as the triggering event for a jeopardy assessment.

2. Summary disposition is not made unavailable to the petitioner by her failure to file an affidavit refuting the department's contention that there was no genuine issue of material fact inasmuch as the same ground, along with others, was asserted by the petitioner in her own motion for summary disposition.

Reversed and remanded.

TAXATION — JEOPARDY ASSESSMENTS — UNLAWFUL SEARCHES AND SEIZURES.

A jeopardy assessment for unpaid taxes may not be issued by the Department of Treasury on the basis of evidence gathered in a search or seizure that has been determined to be unlawful in a criminal proceeding against the taxpayer (MCL 205.26; MSA 7.657[26]).

REFERENCES

Am Jur 2d, State and Local Taxation § 596.
See ALR Index under Taxes.

*Daniel J. Blank,* for the petitioner.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *E. David Brockman,* Assistant Attorney General, for the respondent.

Before: Murphy, P.J., and Michael J. Kelly and Wahls, JJ.

Murphy, P.J. Petitioner appeals from an order of the Michigan Tax Tribunal granting respondent's motion for summary disposition and denying petitioner's motion for summary disposition. We reverse and remand.

In July 1989, police officers searched petitioner's house pursuant to a search warrant. The officers seized four ounces of marijuana, as well as financial records detailing sales and purchases of marijuana. Following the search, petitioner was charged with possession of marijuana with intent to deliver. Petitioner successfully challenged the validity of the search warrant in the Detroit Recorder's Court, which ordered the seized evidence suppressed. The criminal charges against petitioner were subsequently dismissed.

The financial records seized from petitioner's house were turned over to respondent. Respondent and its agents had not participated in the preparation or execution of the search warrant. Respondent used the information contained in the financial records to determine that petitioner owed unpaid sales, use, income, and single business taxes, along with penalties and interest. Shortly before the criminal charges against petitioner were dismissed, respondent issued a jeopardy tax assessment against her, pursuant to MCL 205.26; MSA 7.657(26), in the amount of $26,079.

Petitioner challenged the tax assessment in the

Tax Tribunal, contending that evidence seized during an illegal search cannot be used as the basis for a jeopardy tax assessment. Both parties moved for summary disposition pursuant to MCR 2.116(C)(10), and petitioner also moved for summary disposition pursuant to MCR 2.116(C)(6) and (8). The hearing officer found that the evidence could be considered and used as the basis for the tax assessment. The Tax Tribunal adopted the hearing officer's proposed order, granted summary disposition to respondent, and denied petitioner's motion for summary disposition.

Petitioner contends that the Tax Tribunal erred in granting respondent summary disposition and declining to grant her summary disposition. Petitioner argues that under Michigan law, as set forth in *People v Pringle,* 96 Mich App 26, 33; 292 NW2d 153 (1980), modified 409 Mich 945 (1980), evidence seized during an unconstitutional search and seizure may not be used as the basis for a jeopardy tax assessment. Respondent counters that *Pringle* was essentially overruled in *Tirado v Comm'r of Internal Revenue,* 689 F2d 307 (CA 2, 1982), cert den 460 US 1014 (1983), in which the Second Circuit Court of Appeals determined that the Internal Revenue Service could properly use evidence illegally seized by federal narcotics agents to establish tax liability.

Our review of decisions of the Tax Tribunal is limited to determining whether the factual findings of the tribunal are supported by competent evidence, and, where fraud is not alleged, whether the tribunal has made an error of law or adopted a wrong principle. *Meadowlanes Ltd Dividend Housing Ass'n v Holland,* 437 Mich 473, 482-483; 473 NW2d 636 (1991). In this case, we are called upon to decide whether the Tax Tribunal erred as a

matter of law in rejecting the precedent of *Pringle* and adopting the rationale of *Tirado.*

*Pringle* is factually similar to the case at bar. In *Pringle,* police officers arrested the defendants for delivery of marijuana and seized books and records detailing narcotics transactions. The officers turned the records over to the Michigan Department of Treasury, which in turn used the evidence as the factual basis for a jeopardy tax assessment against the defendants, seizing money that had been discovered during the defendants' arrests. The defendants successfully moved for suppression of the evidence and the circuit court subsequently granted their motion for return of the money. *Id.,* 28. This Court affirmed, determining that evidence obtained pursuant to an unconstitutional search and seizure cannot serve as the factual basis or the triggering event for a jeopardy tax assessment and the seizure of money. *Id.,* 33.

The federal exclusionary rule has been applied differently, however. In *United States v Janis,* 428 US 433; 96 S Ct 3021; 49 L Ed 2d 1046 (1976), the United States Supreme Court held that evidence seized by state police officers in violation of the Fourth Amendment could be used in a civil suit brought by the Internal Revenue Service to determine the suspect's tax liability. The Supreme Court stated that the exclusionary rule is not a personal constitutional right of the aggrieved party, but rather is a judicially created rule designed to safeguard Fourth Amendment rights through deterrence of future unlawful police conduct. *Id.,* 446. The Supreme Court declined to extend the rule to exclude unconstitutionally obtained evidence in situations where it believed the deterrent effect of the rule would not be served. The Supreme Court stated that where, as in that case, the agents of one sovereign execute an un-

constitutional search, the suppression of the seized evidence in a civil proceeding by another sovereign would not significantly deter unconstitutional behavior. *Id.,* 453-458. The Supreme Court reasoned that to so extend the exclusionary rule would hamper the enforcement of valid laws by preventing the admission of relevant and reliable evidence. *Id.,* 447. The Supreme Court also stated that the current sanction of excluding the evidence in a criminal proceeding is sufficient and that any additional sanction provided by extending the rule would not significantly increase the deterrence. *Id.,* 453-454. The Supreme Court did not decide whether the exclusionary rule would apply where the police officers who committed the illegal search were agents of the same sovereign seeking to impose tax liability upon the suspect. *Id.,* 456.

In *Tirado,* the Second Circuit Court of Appeals extended the rule of *Janis* to intrasovereign situations and held that the evidence seized by federal agents during a search that was later found to be unconstitutional could still be used by the IRS to determine the suspect's tax liability for narcotics-related income. The court determined that the key inquiry was whether the original unconstitutional search was somehow motivated by the challenged use of the evidence. *Tirado, supra,* 310-311. The court discussed that the exclusionary rule applied only to those circumstances where the deterrent effect would be "substantial and efficient." *Id.,* 310. The court explained that the need for the evidence should be balanced against the deterrent effect, and that to make this determination, the court must examine the motives of the searching officers. The closer the evidence is to the officers' "zone of primary interest" in seizing the evidence, the stronger the inference that the officers had that use in mind when they seized the evidence.

*Id.,* 310-311. The court further reasoned that the exclusionary rule would apply if there were a close relationship between the search and the secondary proceeding. Any indication of an explicit understanding between the two law enforcement bodies would be decisive to invoke the exclusionary rule. *Id.,* 312. Thus, *Tirado* does not rule out the application of the federal exclusionary rule in all civil cases, but instead calls for an analysis of the facts of each case.

The Michigan Constitution is construed to provide no greater protection against unreasonable searches and seizures than does the Fourth Amendment, absent a compelling reason to apply a different interpretation. Const 1963, art 1, § 11; *People v Collins,* 438 Mich 8, 11, 25-31; 475 NW2d 684 (1991); *People v Cooke,* 194 Mich App 534, 537; 487 NW2d 497 (1992). It does not necessarily follow, however, that Michigan's exclusionary rule must be applied in the same manner as the federal exclusionary rule, nor is Michigan required to follow the interpretation offered by the Second Circuit Court of Appeals. Our Supreme Court has acknowledged that Michigan's exclusionary rule differs from and provides greater protection than that established by the United States Supreme Court. *In re Jenkins,* 437 Mich 15, 28; 465 NW2d 317 (1991).[1]

Michigan courts have applied Michigan's exclusionary rule in civil proceedings under certain circumstances. *Id.;* see, e.g., *Lebel v Swincicki,* 354 Mich 427, 437-438; 93 NW2d 281 (1958); *Pringle,*

[1] We distinguish the discussion in *People v Chapman,* 425 Mich 245, 252-253; 387 NW2d 835 (1986), which did not concern the question at issue in the instant case, but rather concerned whether the interim bail provisions of the release of misdemeanor prisoners act, 1961 PA 44, MCL 780.581 *et seq.;* MSA 28.872(1) *et seq.,* provided greater protections against search and seizure than the Michigan or United States Constitutions.

*supra; Gilbert v Leach,* 62 Mich App 722, 725; 233 NW2d 840 (1975), aff'd sub nom *McNitt v Citco Drilling Co,* 397 Mich 384; 245 NW2d 18 (1976); *Kassner v Fremont Mutual Ins Co,* 47 Mich App 264, 266; 209 NW2d 490 (1973). We believe that this established Michigan precedent, permitting the application of the rule in civil cases, is the better-reasoned approach.[2] The federal decisions discussing this issue concentrate on whether the extension of the exclusionary rule would serve any additional deterrence purpose. We believe that the appropriate focus is whether the failure to so apply the exclusionary rule would frustrate the deterrent purpose of the rule altogether.

The United States Supreme Court in *Janis* cited valid concerns for its reluctance to apply the federal exclusionary rule to civil proceedings, such as the hampering of the enforcement of valid laws. We note, however, that this is also true of the application of the exclusionary rule to criminal proceedings, where federal and Michigan courts agree that the interest of law enforcement must be balanced against the interest of safeguarding Fourth Amendment rights. Similarly, the *Tirado* approach would only exclude unlawfully seized evidence where there was proof of collusion between the agency executing the unlawful search and the agency pursuing the civil proceedings. In addition to the enormity of the burden placed upon a defendant to prove actual collusion among law enforcement personnel, we believe that this approach is insufficient as a deterrent. In criminal proceedings, the interests of deterrence have been

---

[2] We note that *Manko v Root,* 190 Mich App 702, 705-706; 476 NW2d 776 (1991), discusses the contrary view with some favor. That case is factually distinct, however, because it did not involve the suppression in a criminal prosecution of evidence obtained as the result of an illegal search. In any event, we are compelled to follow the established authority of the Michigan Supreme Court.

thought so great as to require essentially a blanket exclusion of all unlawfully seized evidence. We see no reason to conclude that the need for deterrence of unlawful police conduct is less simply because the evidence is to be used in a civil proceeding.

While we do not imply collusion or any wrongdoing by law enforcement officers or the prosecution in this case, we cannot ignore the possibility that criminal proceedings may in some cases serve merely as a pretext for the true goal of seizing evidence for a civil proceeding. An even more likely situation would be the use of the unlawfully seized evidence in a civil proceeding in order to reach a defendant against whom criminal proceedings have been thwarted because of an illegal search and seizure. We therefore conclude that the Tax Tribunal erred in finding that *Pringle* was essentially overruled by *Tirado.* Following the established precedent in this state, the Tax Tribunal is not permitted to base its jeopardy tax assessment upon unlawfully seized evidence, nor may the unlawful search and seizure serve as the triggering event for the tax assessment.

Respondent also contends that it is entitled to summary disposition because petitioner failed to adequately respond to respondent's motion for summary disposition in the Tax Tribunal pursuant to MCR 2.116(C)(10). Respondent's motion was supported by affidavit, as required by MCR 2.116(G)(3)(b). Respondent argues, and the Tax Tribunal held, that pursuant to MCR 2.116(G)(4), petitioner was required to respond with supporting affidavit or other supporting documents to refute respondent's contention that there was no genuine issue of material fact, but failed to do so.

A motion for summary disposition pursuant to MCR 2.116(C)(10) tests the factual support for a claim. *Admiral Ins Co v Columbia Casualty Ins Co,*

194 Mich App 300, 310; 486 NW2d 351 (1992). The court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence available. *Id.,* 311. When determining a motion for summary disposition pursuant to MCR 2.116(C)(10), the trial court must give the benefit of reasonable doubt to the nonmovant and determine whether a record might be developed that would leave open an issue upon which reasonable minds could differ. *Mount Carmel Mercy Hosp v Allstate Ins Co,* 194 Mich App 580, 585; 487 NW2d 849 (1992); *Arbelius v Poletti,* 188 Mich App 14, 18; 469 NW2d 436 (1991).

In this case, we note that petitioner did file an affidavit with her amended response to respondent's motion for summary disposition, but did not refute respondent's contention that there was no genuine issue of material fact. This is understandable, because petitioner agreed that there was no genuine issue of material fact, as evidenced by petitioner's own motion for summary disposition pursuant to MCR 2.116(C)(10). Given these circumstances, respondent was not entitled to summary disposition simply because petitioner failed to dispute that there was no genuine issue of material fact.

Reversed and remanded. We do not retain jurisdiction.

MICHAEL J. KELLY, J., concurred in the result only.