MILLER v FARM BUREAU MUTUAL INSURANCE COMPANY

Docket No. 177517. Submitted December 20, 1995, at Grand Rapids.
   Decided August 9, 1996, at 9:05 A.M.

   Dale Miller brought an action in the Kent Circuit Court against Farm
   Bureau Mutual Insurance Company, his no-fault automobile
   insurer, seeking personal protection insurance benefits for injuries
   he sustained in what he admitted was a suicide attempt when he
   drove his truck into a tree. The defendant moved for summary dis-
   position, arguing that there was no factual dispute that the plaintiff
   attempted suicide or that his injuries resulted from this attempt,
   and that, because attempted suicide is an intentional act, recovery
   is precluded by MCL 500.3105(4); MSA 24.13105(4), which provides
   that automobile-related bodily injury suffered intentionally by the
   injured person or caused intentionally by the claimant is not acci-
   dental bodily injury for which a no-fault insurer must pay personal
   protection insurance benefits. The plaintiff filed a cross motion for
   summary disposition and an affidavit by his social worker stating
   that the plaintiff had undergone treatment for severe depression
   and lacked the mental capacity to form the intent to commit sui-
   cide. The court, Robert A. Benson, J., granted summary disposition
   for the defendant. The plaintiff appealed.

   The Court of Appeals held:

   1. The no-fault act mandates that insurers pay benefits for acci-
   dental bodily injury arising out of the ownership, operation, mainte-
   nance, or use of a motor vehicle as a motor vehicle. MCL
   500.3105(1); MSA 24.13105(1). The act defines bodily injury as acci-
   dental unless suffered intentionally by the injured person or caused
   intentionally by the claimant. MCL 500.3105(4); MSA 24.13105(4). A
   person acts intentionally if the person intended both the act and
   the injury. The subjective intent of an actor is the focus of deter-
   mining whether the actor acted intentionally.

   2. The trial court did not err in ruling that the plaintiff had
   intended to kill himself and that the injuries he suffered were not
   accidental bodily injuries for which the defendant must pay per-
   sonal protection insurance benefits. Evidence that an insured suf-
   fers from mental illness, standing alone, does not create a genuine
   issue of material fact regarding whether the insured intended his

actions or the consequences of his actions. Where, as in this case, the evidence unequivocally shows that the insured intended his actions, the existence of mental illness does not alter that conclusion.

Affirmed.

INSURANCE — NO-FAULT — PERSONAL PROTECTION INSURANCE — INJURIES SUFFERED OR CAUSED INTENTIONALLY — MENTAL ILLNESS.

Bodily injury arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle is not accidental bodily injury for which a no-fault insurer is liable for personal protection insurance benefits where such injury is suffered intentionally by the injured person or caused intentionally by the claimant; a claim of mental illness by an insured who suffers injury in a suicide attempt, by itself, does not create a genuine issue of material fact regarding whether the insured's actions were intended by the insured where the evidence unequivocally shows that the actions were intended by the insured (MCL 500.3105[4]; MSA 24.13105[4]).

*John D. Tallman,* for the plaintiff.

*Dilley, Dewey, Damon & Condon, P.C.* (by *Jonathan S. Damon*), for the defendant.

Before: HOOD, P.J., and YOUNG and T. L. BROWN,* JJ.

PER CURIAM. Plaintiff appeals as of right from an order granting summary disposition to defendant. We affirm.

In his appeal, plaintiff asks this Court to revisit an issue conclusively addressed by our Supreme Court in *Auto-Owners Ins Co v Churchman,* 440 Mich 560; 489 NW2d 431 (1992). We decline to do so.

I

A

This case involves a series of startling admissions by plaintiff that he intended to commit suicide. Plain-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

tiff incurred serious injuries when he drove his truck into a tree at seventy miles an hour. Just before the collision, plaintiff had been cleaning stalls at a stable to pay the boarding expenses for his horses. On the date he was injured, plaintiff argued with the stable owner's son and in an attempt to calm down, drove off in his truck. Yet, while driving, plaintiff became increasingly agitated and stopped to write a note to his wife stating:

> Honey, I Love You. I Can't Take It. I Love You But I can't Take I [sic] it Any More [sic]. Love Dale.

Plaintiff returned to the stable and threw the note to his wife, and left again in his truck. After leaving the stable, plaintiff drove into the tree.

Frank Vargo, a Kent County Sheriff's Deputy, was dispatched to the scene of the accident. After ascertaining plaintiff's identity, Deputy Vargo asked plaintiff what happened. Plaintiff informed Deputy Vargo that he had closed his eyes and tried to kill himself. Deputy Vargo reported that plaintiff appeared alert and in stable condition. Plaintiff's wife arrived at the scene shortly thereafter and informed Deputy Vargo that plaintiff was "coming off" antidepressant drugs. She also provided Deputy Vargo with the note written to her by plaintiff. When Deputy Vargo interviewed plaintiff at the hospital later that evening, plaintiff stated that the reason he was not wearing a seat belt was because he was attempting to kill himself.

In his deposition, plaintiff testified that he remembered very little of the incident, but he could recall seeing the tree and the speedometer in front of him. He testified that he had done "something stupid

and attempted suicide." Plaintiff also acknowledged telling the police officer that he tried to kill himself.

B

Notwithstanding plaintiff's admissions that he had attempted to kill himself, plaintiff later filed a claim for his injuries with defendant, his no-fault carrier. Defendant denied plaintiff's claim. Plaintiff then instituted this action to recover for his injuries, claiming that he was entitled to the insurance benefits because his injuries resulted from an automobile-related accident. In response, defendant argued recovery was precluded in accordance with MCL 500.3105(4); MSA 24.13105(4). The no-fault statute precludes recovery when injuries result from intentional acts. The statute provides:

> (1) Under personal protection insurance an insurer is liable to pay benefits for *accidental* bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter.

> * * *

> (4) Bodily injury is *accidental* as to a person claiming personal protection insurance benefits *unless* suffered intentionally by the injured person or caused intentionally by the claimant. Even though a person knows that bodily injury is substantially certain to be caused by his act or omission, he does not cause or suffer injury intentionally if he acts or refrains from acting for the purpose of averting injury to property or to any person including himself. [MCL 500.3105(1), (4); MSA 24.13105(1), (4) (emphasis added).]

In moving for summary disposition pursuant to MCR 2.116(C)(10), defendant argued that there was no factual dispute that plaintiff attempted suicide or

that his injuries resulted from this attempt, and thus it was entitled to judgment as a matter of law because attempted suicide is an intentional act. In response, plaintiff filed a cross motion for summary disposition with an affidavit from his treating social worker, attesting to the fact that plaintiff had undergone treatment for severe depression and lacked the mental capacity to form the intent to commit suicide.

The trial court granted defendant's motion, finding that plaintiff intended to commit suicide. The court reasoned that plaintiff's mental capacity was not relevant in determining, pursuant to *Auto-Owners Ins Co v Churchman, supra,* whether he intended the act and the injury.

II

On appeal, plaintiff makes the following arguments: (1) the trial court erred in finding that there was no genuine issue of fact concerning whether plaintiff could form the intent to commit suicide and (2) plaintiff was entitled to summary disposition because defendant failed to establish a genuine issue of material fact with affidavits or other documentary evidence that disputed the affidavit of plaintiff's treating social worker. Essentially, plaintiff asks this Court to conclude that his mental illness created a genuine issue of fact concerning whether he intended to commit suicide. Under these facts, we decline to do so.

III

Michigan's no-fault insurance system aims to provide victims of automobile-related accidents with assured, adequate, and prompt payment for economic losses. *Shavers v Attorney General,* 402 Mich 554,

578-579; 267 NW2d 72 (1978). The no-fault act mandates that insurers "pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle." MCL 500.3105(1); MSA 24.13105(1). The act defines bodily injury as accidental "unless *suffered intentionally* by the injured person or *caused intentionally* by the claimant." MCL 500.3105(4); MSA 24.13105(4). One acts intentionally if he intended both the act *and* the injury. *Schultz v Auto-Owners Ins Co*, 212 Mich App 199, 201; 536 NW2d 784 (1995); *Bronson Methodist Hosp v Forshee*, 198 Mich App 617, 629-630; 499 NW2d 423 (1993). The subjective intent of an actor is the focus of determining whether the actor acted intentionally. *Schultz, supra*, 201; *Frechen v DAIIE*, 119 Mich App 578, 580-582; 326 NW2d 566 (1982). Germane to plaintiff's claim on appeal is whether evidence of an actor's mental capacity raises a factual question regarding the actor's subjective intent. In light of our Supreme Court's decision in *Churchman, supra*, 568-570, we conclude that a claim of mental illness, by itself, does not create a factual question regarding the actor's intent.

A

In *Churchman*, the insured, Henry G. Frost, Jr., became enraged and killed Gary Churchman, and then turned the gun on himself. *Id.* 563-564. When Churchman's mother and girlfriend brought actions against Frost's estate, Auto-Owners Insurance Company, Frost's homeowner's insurer, instituted a declaratory action. *Id.*, 564-565. Auto-Owners insisted that Churchman's injuries resulted from the intentional acts of Frost, and that Frost's policy excluded recov-

ery for bodily injury "expected or intended" by the insured. The trial court denied Auto-Owners' claim on the basis of evidence that Frost was a paranoid schizophrenic. *Id.*, 565. Looking to the law in other jurisdictions, the trial court reasoned that Frost could not form the intent because of his mental illness. *Id.* This Court affirmed the trial court's decision. 184 Mich App 699; 459 NW2d 24 (1990). The Supreme Court reversed and concluded that "an insane or mentally ill person can intend or expect the results of his actions." *Churchman, supra,* 440 Mich 569-570. *Churchman's* holding effectively resolved a conflict of decisions from this Court, and thus is dispositive of the issue in this case.[1]

---

[1] Plaintiff urges that *Churchman's* holding is inapposite to determine whether an actor acted intentionally within the meaning of the no-fault act. Plaintiff argues that *Churchman* is distinguishable because the *Churchman* Court construed language in a policy exclusion that precluded recovery for injuries "expected or intended" by the insured whereas we have been asked to construe language in the no-fault act that precludes recovery when an actor has acted "intentionally." We disagree with plaintiff's argument.

A determination of intent under the no-fault act requires application of a subjective standard. *Schultz, supra,* 201. This subjective standard is also applied to determine intent when construing policy language that excludes coverage for injuries "intended or expected" by the insured. Compare *Churchman, supra,* 440 Mich 567-568. The ultimate issue before us is whether, *from the actor's point of view,* plaintiff's alleged mental incapacity precludes finding that he acted intentionally. The *Churchman* Court was faced with the same question. *Id.*, 563. Accordingly, the Court resolved whether evidence concerning the actor's mental incapacity affected the question of the actor's intent when that intent is determined by applying a subjective standard. See *id.*, 567-568. In answering this question, the *Churchman* Court found that an actor has acted *intentionally* when evidence *from the actor's point of view* clearly shows the actor acting *for the purpose* of causing injury. See *id.*, 569-570. The *Churchman* Court then emphasized that this finding *would not* be altered with evidence that the actor suffered from mental illness at the time that he caused the injury. *Id.*, 570, 572-573. The issue now before us requires undertaking the same analysis as the Court did in *Churchman.*

B

Before *Churchman*, two panels of this Court reached opposite results in determining whether evidence of mental illness affects a finding that an insured intended his or her actions. *Allstate Ins Co v Miller (Miller I)*, 175 Mich App 515, 521-522; 438 NW2d 638 (1989), remanded 434 Mich 882 (1990) (when a person cannot form an intent to act because of insanity, he has not acted "intentionally" as that term is used in insurance policies); *Transamerica Ins Corp of America v Boughton*, 177 Mich App 253, 258-259; 440 NW2d 922 (1989) (a person who has been deemed insane can act intentionally as contemplated by an insurance exclusion).

In *Miller I*, the insured randomly shot inside a restaurant, took a hostage and shot her in the head at close range. The insured was shot and killed by the police at the scene. *Miller I*, *supra*, 516-517. The insured's policy excluded coverage for injuries resulting from the criminal or intentional actions of the insured that the insured "intended" or "reasonably expected" to result from his actions. *Id.*, 520, 521. Evidence was presented to the lower court that the insured was not aware of what he was doing or was unable to control his actions when he engaged in this killing spree. *Id.*, 522.

The *Miller I* panel noted that in the criminal context insanity mitigates a defendant's ability to form intent for criminal liability and observed that other jurisdictions considering the question have extended this principle to hold that insanity precludes a finding that an insured acted intentionally. *Id.*, 521 (citing anno: *Liability insurance: intoxication or other mental incapacity avoiding the application of clause*

*in liability policy specifically exempting coverage of injury or damage caused intentionally by or at direction of insured*, 33 ALR4th 983, 988 and cases cited therein). The *Miller I* panel agreed with the state courts in other jurisdictions that held that "when a person cannot form an intent to act because of insanity, he has not acted 'intentionally' as that term is used in insurance policies, unless the policy explicitly states otherwise." *Id.*, 521-522. The *Miller I* panel concluded that the evidence of the insured's mental incapacity raised a genuine issue of material fact regarding whether the insured acted "intentionally." *Id.*, 522.

However, the *Boughton* panel took the opposite approach, following a different line of state court cases holding that "an injury inflicted by a person who is mentally ill or insane may be intentional within the meaning of the exclusion." See *Boughton*, *supra*, 259, and cases cited therein. In *Boughton*, the insured shot and killed his estranged wife, and his criminal prosecution resulted in a directed verdict of not guilty by reason of insanity. *Id.*, 255. The panel declined to find the verdict determinative of whether the insured intended his actions. *Id.*, 260. The panel explained:

> A conviction represents a positive finding of criminal intent beyond a reasonable doubt. An acquittal by reason of insanity on the other hand is *not* an adjudication of lack of intent, but is a determination that the prosecution failed to prove beyond a reasonable doubt that a defendant was capable of forming the intent necessary to be convicted of a crime. Compare *Aetna Casualty & Surety v Dichtl*, [78 Ill App 3d 970; 34 Ill Dec 759; 398 NE2d 582 (1979)]. Failure to prove sanity beyond a reasonable doubt and ability to prove by a preponderance of the evidence that the insane

intended and expected injury are not necessarily contradictory positions. We recognize that there will be cases where insanity manifests itself such that the insured cannot intend or expect to cause an injury; an actor may believe that he is peeling a banana rather than pointing a pistol. See *Johnson* [*v Ins Co of North America*, 232 Va 340, 347; 350 SE2d 616 (1986)]. However, a broad holding that a criminal adjudication of insanity of the insured as a matter of law prevents application of the policy exclusions, such as the one in the instant case, is inappropriate. [*Id.*, 259-260 (emphasis in original).]

The panel consequently held that on the basis of the insured's actions, the trial court properly found that he intended and expected to kill his wife when he shot her. *Id.*, 260.

The *Churchman* Court adopted the reasoning of the *Boughton* panel but made no mention of the decision in *Miller I*. See *Churchman, supra,* 440 Mich 569. The history of *Miller* on remand and subsequent appeals explains this absence. The Supreme Court remanded *Miller I* for reconsideration in light of its decision in *Allstate Ins Co v Freeman* and *Metropolitan Property & Liability Ins Co v DiCiccio*, 432 Mich 656; 443 NW2d 734 (1989), modified 433 Mich 1202 (1989). See 433 Mich 882 (1989). On remand, the *Miller I* panel reaffirmed its original holding, concluding that insanity precluded finding that the insured intended to act in the first instance, thus distinguishing its decision from *Freeman*.[2] *Allstate Ins Co v*

_____

[2] The *Freeman* Court construed a policy clause that excluded coverage for injury that could "reasonably be expected" from an intentional or criminal act. *Freeman, supra,* 685. The Court held that this language required an objective, rather than subjective, analysis of whether the injury is a "natural, foreseeable, expected and anticipated result of the insured's intentional acts." *Id.*, 687 (RILEY, J.); see also *id.*, 701 (BOYLE, J.); *id.*, 721 (ARCHER, J.). The *Miller II* panel concluded such an analysis was

*Miller (On Remand) (Miller II),* 185 Mich App 345, 348; 460 NW2d 612 (1990). Significantly, the panel cited the presence of expert testimony in support of its position that the insured was not in control of his actions when he committed his acts. *Id.* Notwithstanding, the Supreme Court vacated the decision and remanded in light of *Churchman, supra,* and other recent decisions from the Court. See 441 Mich 929 (1993). The panel *again* reaffirmed its holding that the expert testimony created a genuine issue of fact. *Allstate Ins Co v Miller (On Remand) (Miller III),* unpublished opinion per curiam of the Court of Appeals issued October 8, 1993 (Docket No. 161270). On appeal to the Supreme Court, the opinion was vacated and the case was remanded to the circuit court, and the Supreme Court summarily held that the insured acted "intentionally" within the meaning of the policy exclusion. See 448 Mich 909 (1995).

C

After *Churchman* and the Supreme Court's actions in *Miller I, II,* and *III,* the law in Michigan is clear: Evidence that an insured suffers from mental illness, standing alone, does not create a genuine issue of material fact regarding whether the insured intended his actions or the consequences of his actions.

Plaintiff attempts to evade the holding of *Churchman* by citing *Mattson v Farmers Ins Exchange,* 181 Mich App 419; 450 NW2d 54 (1989), lv den 436 Mich 864 (1990), a pre-*Churchman* decision. As in this case, the *Mattson* panel interpreted whether MCL

---

irrelevant when an insured did not intend the act in the first instance. *Allstate Ins Co v Miller (On Remand) (Miller II),* 185 Mich App 345, 347-348; 460 NW2d 612 (1990).

500.3105(4); MSA 24.13105(4) precluded recovery when the insured presents evidence that his injuries resulted from mental illness. The *Mattson* panel, in partial reliance on *Miller I*, held that evidence of insanity created a genuine issue of material fact regarding whether the insured acted "intentionally."[3] *Id.*, 428. Assuming without deciding the validity of the holding in *Mattson*, we note that the facts in that case were extraordinary.

In *Mattson*, the plaintiff was diagnosed by his psychiatrist and observed by another psychiatrist just before he was injured. *Id.*, 421. Both doctors recommended that the plaintiff be committed at once. *Id.* The second doctor testified that the plaintiff *could not remember his own name* without looking at his drivers' license. *Id.* The plaintiff's family transported him to an emergency room for commitment and, while waiting for admission, the plaintiff wandered away from the emergency room and was struck by an automobile when he ran into the street. *Id.* At trial, the plaintiff introduced expert testimony that his mental condition and organic brain syndrome disabled him from forming an intent to commit suicide. *Id.*, 425-427. Yet, there was testimony that the plaintiff stated to medical personnel nine months after the accident that this act was a suicide attempt. *Id.*, 427.

This Court held that in light of these facts, a genuine issue of fact existed regarding whether the plaintiff intended his injuries, referring to *Miller I*'s holding that when insanity disables an individual from forming an intent, the individual has not acted "intention-

---

[3] To the extent that the *Mattson* panel relied on *Miller I*, its holding has no precedential value because that decision was ultimately vacated by the Supreme Court. See 441 Mich 929 (1993) and 448 Mich 909 (1995).

ally" as that term is used in insurance policies. *Id.,* 428. Unlike the *Miller I* panel, the *Mattson* panel declined to summarily hold that this evidence would preclude a finding that the insured acted intentionally, reasoning that such evidence was not dispositive. *Id.* The panel stated:

> Although mental illness, more particularly psychosis in any of its myriad manifestations, is relevant in establishing intent, it is not dispositive. Those who are insane may "intend" to write, to sleep, to die. The issue for the purposes of the no-fault statute, is *not* the source or motive for the intent, but merely its *existence.* [*Id.* (emphases added).]

This portion of *Mattson's* reasoning is consistent with the rationale in *Churchman, supra,* and *Boughton, supra.* Consequently, the outcome in *Mattson* can arguably be justified under its extraordinary facts. In contrast, there are no extraordinary facts in this case, and the principles of *Churchman* guide our review of this case.

IV

This Court reviews a trial court's grant of summary disposition de novo to determine whether the moving party was entitled to judgment as a matter of law. *Stehlik v Johnson (On Rehearing),* 206 Mich App 83, 85; 520 NW2d 633 (1994). A motion pursuant to MCR 2.116(C)(10) tests the factual basis underlying the plaintiff's claim. *Radtke v Everett,* 442 Mich 368, 374; 501 NW2d 155 (1993). In reviewing a C(10) motion, a court considers pleadings, affidavits, depositions, admissions, and any evidence in favor of the nonmoving party, granting that party the benefit of any reasonable doubt. *Id.* Summary disposition is appropriate when there is no genuine issue regarding any

material fact, and the moving party is entitled to judgment as a matter of law. *Id.*

When ruling on the motion, the trial court considered plaintiff's deposition testimony, plaintiff's note to his wife, and the deposition testimony and reports of Deputy Vargo attesting to plaintiff's statements after the crash. The court declined to consider defendant's argument that plaintiff's treating social worker, holding only a master's degree in social work, was not competent to attest to plaintiff's mental capacity. Instead, in reliance on *Churchman*, the court concluded that the affidavit was irrelevant. We agree.

The evidence considered by the trial court leads to the inescapable conclusion that plaintiff purposefully attempted suicide. Although there has been debate in the field of psychology regarding the volitional nature of suicide attempts committed by those suffering mental illness, there is no such debate in the field of law. See *Mirza v Maccabees Life & Annuity Co*, 187 Mich App 76, 85-89; 466 NW2d 340 (1991). As *Churchman* instructs, when the evidence unequivocally shows that the insured intended his or her actions, the existence of mental illness does not alter that conclusion. *Churchman, supra*, 440 Mich 568-570.

Accordingly, we hold that summary disposition was properly granted in defendant's favor. In so holding, we find it unnecessary to address plaintiff's claim that he was entitled to summary disposition because defendant failed to submit documentary evidence in opposition to plaintiff's countermotion for summary disposition. Generally, when challenging a motion for summary disposition under MCR 2.116(C)(10), the nonmoving party has the burden of submitting documentary evidence to establish a genuine issue of

material fact. MCR 2.116(G)(4). In this case, by defendant's own motion, it agreed with plaintiff that no genuine issue of material fact existed. Hence, plaintiff is not entitled to summary disposition simply by defendant's failure to support a position contrary to its own motion. Compare *Kivela v Dep't of Treasury*, 200 Mich App 545, 553; 505 NW2d 11 (1993), rev'd on other grounds 449 Mich 220; 536 NW2d 498 (1995). In addition, there is no need to address defendant's claims that plaintiff's social worker was not competent to testify regarding plaintiff's sanity and that the social worker's affidavit was inadmissible. That issue was not decided below and therefore is not preserved for review. *American States Ins Co v Auto Club Ins Ass'n*, 193 Mich App 248, 256; 484 NW2d 1 (1992).

Affirmed.