WEEKLEY v JAMESON

PIONEER STATE MUTUAL INSURANCE COMPANY v WEEKLEY

Docket Nos. 174786, 174787. Submitted April 11, 1996, at Lansing. Decided
    January 7, 1997, at 9:00 A.M. Leave to appeal sought.

> Donald Weekley brought an action in the Shiawassee Circuit Court
> against Donald Jameson, his father, alleging that the defendant had
> molested him sexually on numerous occasions and seeking dam-
> ages for psychological injuries resulting from the molestation.
> Because the defendant was living with his mother, Alberta Jame-
> son, during the period of the alleged molestation, the defendant's
> attorney tendered the defense of the lawsuit to Alberta Jameson's
> homeowner's liability insurer, Pioneer State Mutual Insurance Com-
> pany, which denied coverage and refused to undertake the defense
> of the matter. Following a bench trial, the court, James T. Kallman,
> J., found that the defendant had sexually molested the plaintiff on
> numerous occasions, that the plaintiff had suffered severe emo-
> tional injuries as a result of the molestation, that the defendant
> lacked the capacity to control his conduct or to comprehend the
> effect that his sexual misconduct would have on the plaintiff, and
> that the defendant had not intended to injure the plaintiff. The
> court then entered a judgment of damages for the plaintiff and
> against the defendant. A writ of garnishment was served on Pio-
> neer, which filed a disclosure in which it denied liability under the
> policy it had issued to Alberta Jameson. The court, Gerald D. Los-
> tracco, J., entered a judgment for the plaintiff and against Pioneer
> in the amount of Pioneer's coverage for a single occurrence. Pio-
> neer appealed, and the plaintiff cross appealed.
>
> Pioneer State Mutual Insurance Company, after being served with the
> writ of garnishment, brought an action in the Shiawassee Circuit
> Court against Donald Weekley, Donald Jameson, and Alberta Jame-
> son, seeking a declaration that it was not liable under the home-
> owner's insurance policy issued to Alberta Jameson for the inten-
> tional acts of sexual molestation committed by Donald Jameson on
> Donald Weekley. The court, Gerald D. Lostracco, J., after finding
> that the policy provision that excluded coverage for "bodily injury
> or property damage which is either expected or intended from the
> standpoint of the insured" did not apply in this situation where the

trier of fact had specifically found that Donald Jameson had not intended to harm Donald Weekley and had not expected to do so and finding that the numerous molestations constituted a single occurrence within the meaning of the policy, entered a judgment for Donald Weekley and against Pioneer in the amount of Pioneer's coverage for a single occurrence. Pioneer appealed, and Donald Weekley cross appealed. The appeals were consolidated.

The Court of Appeals *held*:

1. As a matter of public policy, the law will infer an intent to injure where an adult sexually abuses a minor. The trial court's finding of mental infirmity does not affect that inference. Accordingly, the trial court erred in holding Pioneer liable under its policy for the damages resulting from Donald Jameson's sexual molestation of Donald Weekley.

2. The failure of Pioneer to assert in its letter denying coverage that the denial was based on the inference of intent as a matter of law did not waive its right to assert that inference in the later proceedings as a basis for its denial of coverage.

Reversed.

C. F. YOUNGBLOOD, dissenting, stated that the trial court's order should be affirmed because the inference of an intent to injure should not be used where, as here, there is a finding that the assailant could not entertain that intent because of a mental condition that rendered him of sufficiently diminished mental capacity that he could not even be termed an adult within the meaning of prerequisites for the application of the inference.

INSURANCE — INTENT TO INJURE — INFERENCES — PUBLIC POLICY.

The law, as a matter of public policy, will infer an intent to injure for the purpose of an intentional-acts exclusion to a liability insurance policy where an adult assailant sexually abuses a minor; a finding by a trier of fact that the adult assailant suffers from a mental infirmity does not preclude the application of that inference.

*Clark Shanahan* (by *Victoria V. Kremski*), for Donald Weekley.

*Terrance P. Dignan,* for Donald Jameson and Alberta Jameson.

*Terence J. O'Neill,* for Pioneer Mutual Insurance Company.

Before: MacKenzie, P.J., and Saad and C. F. Young-
blood*, JJ.

MacKenzie, P.J. In these consolidated cases, Pioneer
State Mutual Insurance Company appeals as of right
from an order granting summary dispositions for Don-
ald Weekley and for Donald Jameson pursuant to
MCR 2.116(C)(10). We reverse.

Donald Weekley, who was born in 1971, brought a
tort action alleging that his father, Donald Jameson,
repeatedly sexually molested him during the years
1983 to 1986. The complaint sought damages for psy-
chological harm. At the time he assaulted his son,
Jameson, who suffered a closed head injury in 1978,
was living with his mother, Alberta Jameson. Pioneer
was Alberta Jameson's homeowner's insurer. Jame-
son's attorney tendered Weekley's lawsuit to Pioneer
to defend under the policy. Pioneer denied coverage
and refused to undertake the defense of the matter.

Weekley's action against Jameson was tried in a
bench trial. The court found that Jameson had com-
mitted fellatio on his son somewhere between twenty-
eight and eighty times between 1980 and 1984, and
that Weekley had suffered severe emotional injuries
as a result. The court further found that Jameson
lacked the mental capacity to control his conduct or
to comprehend the effect that his sexual misconduct
would have on his son and that he did not intend to
injure the youth. Weekley was awarded $150,000 in
damages. He then obtained a writ of garnishment
against Pioneer.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Pioneer subsequently filed a declaratory judgment action seeking a determination that it had no duty to indemnify Donald Jameson. Pioneer's policy excluded coverage for "bodily injury or property damage which is either expected or intended from the standpoint of the insured."[1] The court concluded that this clause did not preclude coverage for Jameson's acts and therefore granted summary disposition in favor of Jameson and Weekley. In reaching this result, the court decided that Jameson had inflicted "bodily injury" upon his son, but that it was impossible to infer that he intended to harm the youth because the court in the underlying suit specifically found that he had not intended or expected to do so. The court, however, capped Pioneer's liability at $100,000, the policy limit for a covered "occurrence," by treating Jameson's sexual misconduct as a single occurrence rather than multiple occurrences under the policy.

Although the parties raise a number of issues on appeal, we find one to be determinative. We agree with Pioneer that coverage for Jameson's acts was excluded under the policy because, assuming that Weekley suffered bodily injury as a result of those acts, the injury was intended by Jameson as a matter of law.

For purposes of civil liability insurance, courts should infer the intent to injure as a matter of law when an adult sexually assaults a child. *Fire Ins*

---

[1] A prior policy issued by Pioneer in effect from December 11, 1978, to December 11, 1981, did not contain an intentional-acts exclusion. However, as noted by the trial court, because Weekley's complaint in the underlying tort action alleged that Jameson's sexual assaults began in 1983, Pioneer was not put on notice that there may have been an occurrence covered by the 1978-1981 policy. Accordingly, Pioneer had no duty to defend or indemnify under that policy.

*Exchange v Diehl,* 450 Mich 678, 689-690; 545 NW2d
602 (1996), and cases cited therein; *State Mutual Ins
Co v Russell,* 185 Mich App 521; 462 NW2d 785
(1990). See also *Linebaugh v Berdish,* 144 Mich App
750, 762; 376 NW2d 400 (1985), and *Auto-Owners Ins
Co v Gardipey,* 173 Mich App 711, 714-715; 434 NW2d
220 (1988). This inference is not based on contract
interpretation, *Diehl, supra,* p 689, n 3, but on public
policy:

> Generally, [the] courts reason that the inference of the
> intent to injure should be applied because the act of child
> molestation is inherently harmful. *B B v Continental Ins
> Co,* 8 F3d 1288, 1293 (CA 8, 1993).
>
> "The [inferred-intent] approach . . . stands for the pro-
> position that a person who sexually manipulates a minor
> cannot expect his insurer to cover his misconduct and can-
> not obtain such coverage simply by saying that he did not
> mean any harm. The courts following the majority approach
> have concluded that sexual misconduct with a minor is
> objectively so substantially certain to result in harm to the
> minor victim, that the perpetrator cannot be allowed to
> escape society's determination that he or she is expected to
> know that. Hence, these courts infer the intent to harm as a
> matter of law in sexual misconduct liability insurance cases
> involving minors." [*Id.,* quoting *Whitt v DeLeu,* 707 F Supp
> 1011, 1016 (WD Wis, 1989).] [*Diehl, supra,* pp 689-690, n 4.]

We are of the opinion that the intent to injure
should also be inferred as a matter of law where, as
here, an adult with a diminished mental capacity sex-
ually assaults a minor. Under the inferred-intent
approach adopted by our Supreme Court in *Diehl,
supra,* where the victim of an adult's sexual miscon-
duct is a minor, the actor's capacity to know the
wrongfulness of his acts is immaterial, and it is also
immaterial that the actual injury caused is of a differ-

ent character or magnitude from that intended. *Whitt, supra*, p 1015. See also *Fire Ins Exchange v Abbott*, 204 Cal App 3d 1012; 251 Cal Rptr 620 (1988); *Allstate Ins Co v Jarvis*, 195 Ga App 335; 393 SE2d 489 (1990). Prior cases of this Court are in accord. In *Russell, supra*, pp 527-528, for example, this Court held the insured child molester's "characterization of his acts as impulsive and the product of an illness to be of no moment," because the characterization did "not detract from the inference of harmful intent." Similarly, in *Gardipey, supra*, p 712, a blood disorder had "progressively affected [the abuser's] mental capacity and ha[d] caused significant changes in his character." This Court nevertheless concluded that the inference, that as a matter of law child sexual abuse by an adult involves an intent to injure, remained applicable.

In this case, no one asserts that Jameson was unaware of the nature of his conduct at the time he sexually abused Weekley. As a matter of law, his intent to injure will be inferred, *Diehl, supra*, and the trial court's finding of mental infirmity does not affect that inference, *Whitt, supra*. Compare *Miller v Farm Bureau Mutual Ins Co*, 218 Mich App 221; 553 NW2d 371 (1996); *Auto-Owners Ins Co v Churchman*, 440 Mich 560; 489 NW2d 431 (1992). As noted in *Diehl, supra*, p 689, n 4, quoting *B B v Continental Ins Co, supra*, an adult who sexually abuses a minor cannot obtain insurance coverage "simply by saying that he did not mean any harm." Accordingly, we reverse the order of the trial court requiring Pioneer to indemnify Jameson.

Weekley argues that, by failing to raise the issue in its letter to Jameson denying coverage, Pioneer

waived the contention that the intent to injure must be inferred as a matter of law. We disagree. It is true that where a liability insurer notifies an insured of denial of coverage on a specific basis, the insurer may be estopped from alleging additional bases for noncoverage at a later time. *Lee v Evergreen Regency Cooperative*, 151 Mich App 281, 285; 390 NW2d 183 (1986). However, the rule is inapplicable to the circumstances of this case because it may not be used to create liability contrary to the express provisions of the parties' contract. *Id.*, pp 285-288. Here, Pioneer did not insure against the intentional acts of its insured. An insurer should not be required by waiver and estoppel to pay a loss for which it charged no premium. *Id.* Moreover, under *St Paul Ins Co v Bischoff*, 150 Mich App 609, 613; 389 NW2d 443 (1986), Pioneer did not abandon the issue of Jameson's inferred intent to harm Weekley by failing to reserve its rights to contest coverage.

Our disposition of the above issues makes it unnecessary to address the parties' remaining claims.

Reversed.

SAAD, J., concurred.

C. F. YOUNGBLOOD, J. *(dissenting)*. I respectfully dissent. The trial judge, sitting as the factfinder at trial, found that Donald Jameson lacked the mental capacity to control his conduct or to understand the differences between right and wrong, that he could not comprehend the effect that his sexual conduct would have on his son, and that he did not intend to injury Weekley. This "insanity" was the result of a severe head injury that Jameson suffered in 1978. It would be illogical, unsound, and just plain wrong to hold

that under the civil law of this state Jameson can be found to have intended his acts in the face of such factual findings.

The majority misreads *Fire Ins Exchange v Diehl*, 450 Mich 678, 689-690; 545 NW2d 602 (1996). *Diehl* does not stand for the proposition that just because a person has reached an age sufficient to be termed an "adult," the person is responsible for the person's acts regardless of the person's mental capacity or competency. The *Diehl* Court states that "where an adult sexually assaults a child" the intent to injure may be inferred as a matter of law. The Court goes on to say that where a child is the assailant, the intent to injure *should not* be inferred as a matter of law. *Id.* This would also apply to a person of adult age but with the mentality of a child.

I disagree that the "intent to injure" should be, or can be, inferred as a matter of law where there have been factual findings such as those the trial judge made in this case. This is not just "an adult with a diminished mental capacity." Here, Jameson was not only "insane" within Michigan's criminal statutory definition of insanity, but he was of such mental incapacity that he could not intend or expect to cause an injury. This is much more than "simply saying that he did not mean any harm.

This is not contrary to *Auto-Owners Ins Co v Churchman*, 440 Mich 560; 489 NW2d 431 (1992). In *Churchman*, the assailant was not being treated for any mental illness or incapacity, and the trial judge made no finding that Mr. Frost (the assailant) did not have the necessary intent to kill. The Court determined:

> While Mr. Frost may not have been criminally liable for
> his acts, he was capable of foreseeing their consequences
> and understanding what he was doing, i.e., ending another
> human being's life. [*Id.* at 568.]

Here, the trial court, after a trial, made the opposite
determination and found Jameson *did not* intend to
injure Weekley.

There is no inequity to this result, and no evidence
that this would require the insurer to pay for a loss
for which it charged no premium. Jameson received a
severe head injury in 1978, which caused him to
become insane. Unfortunately, people in society are
injured sometimes and sometimes these injuries
cause mental incapacity and mental illnesses, which
can cause some of these mentally impaired people to
harm other people. The frequency and certainty of
this occurring is an actuarial calculation and a part of
the cost of every insurance policy.

In addition, as the Court explained in *Diehl, supra*
at 688 a policyholder reading the intentional-acts
exclusion would reasonably expect that a severely
mentally incapacitated person in the household would
not be judged by an objective adult standard.

I would affirm.