## DAGUANNO v DEPARTMENT OF TREASURY

Docket No. 139096. Submitted November 17, 1993, at Lansing. Decided December 20, 1993, at 10:10 A.M.

Richard Daguanno appealed to the Tax Tribunal a use tax assessment and associated penalties and interest levied by the Department of Treasury when he sought to have the title of a vehicle transferred to him. The petitioner had asked Thomas Nemes, who qualified for a Ford Motor Company discount plan, to purchase an automobile under the plan on the petitioner's behalf. Nemes agreed to take title to the vehicle in order to satisfy the requirements of the plan, but the petitioner was to be responsible for all costs and would have sole possession of the vehicle. Nemes signed the application for the vehicle's title and the mileage statement, both Nemes and the petitioner executed the retail installment contract for the vehicle, and the petitioner took possession of the vehicle. Six months later, Nemes transferred the title of the vehicle to the petitioner. The respondent treated that transfer of title as a taxable event for use tax purposes and levied the tax. The petitioner appealed the assessment and argued that the transfer of title was exempt from a use tax levy because he had paid sales tax at the time of the retail purchase of the vehicle. A Tax Tribunal hearing officer agreed with the petitioner, and the Tax Tribunal adopted the hearing officer's proposed opinion and judgment setting aside the use tax assessment. The respondent appealed.

The Court of Appeals *held:*

Section 3(3) of the Use Tax Act, MCL 205.93(3); MSA 7.555(3)(3), requires use tax to be paid on each transfer of a vehicle other than those for resale by registered dealers or where exempt under the act. Although § 4(a) of the act, MCL 205.94(a); MSA 7.555(4)(a), exempts from a use tax levy any sale of property for which the consumer has paid sales tax, the Tax Tribunal's reliance on that exemption is misplaced, because the transfer of title from Nemes to the petitioner was a transfer of title subject to a use tax levy for which there had been no sales tax paid, the prior transfer of title to Nemes upon which sales tax had been paid being an entirely separate transaction.

Reversed.

Richard Daguanno, in propria persona.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Russell E. Prins* and *Ross H. Bishop,* Assistant Attorneys General, for the respondent.

Before: GRIFFIN, P.J., and FITZGERALD and CORRIGAN, JJ.

GRIFFIN, P.J. Respondent appeals as of right from a judgment of the Michigan Tax Tribunal canceling a use tax assessment against petitioner of $474 plus penalties and interest. We reverse and reinstate the tax, penalties, and interest.

I

In June 1987, petitioner approached his law associate, Thomas Nemes, regarding the purchase of a car under the Ford Motor Company employee discount "A Plan." Under the plan, Nemes was entitled to purchase a Ford vehicle at a reduced price because his father was a retired Ford salaried employee. After petitioner located a 1987 Mercury Sable, Nemes agreed to make arrangements to purchase the vehicle through the Ford A Plan.

In an effort to qualify for the plan, Nemes agreed to title the vehicle in his name for six months, and both Nemes and petitioner agreed that they would execute a joint-buyer retail installment contract. It was understood between petitioner and Nemes that petitioner would be solely responsible for all costs of the transaction, including taxes, insurance, financing charges, and the purchase price. Further, it was agreed that

petitioner would have sole possession of the vehicle and would be considered "the owner."

After Nemes obtained the qualifying forms for the Ford A Plan, petitioner delivered the forms to the car dealership. In accordance with their agreement, both Nemes and petitioner signed the Ford Motor Credit Company application and the Michigan retail installment contract. The vehicle was purchased for $18,247.68. The entire purchase price of the vehicle was financed, including sales tax of $655.07.

On June 8, 1987, Nemes accompanied petitioner to the car dealership. Nemes signed the application for the title and registration and the odometer mileage statement. The delivery check list was signed by petitioner, who then took possession of the vehicle.

Nemes transferred the vehicle title to petitioner on December 30, 1987. After respondent assessed petitioner use tax of $474 plus penalties and interest on account of the title transfer, petitioner appealed to the Michigan Tax Tribunal. Petitioner argued that the title transfer was exempt from use tax because he had paid the sales tax at the time of the retail purchase of the vehicle. The Tax Tribunal hearing officer agreed. In a proposed opinion and judgment entered on February 21, 1990, the Tax Tribunal ruled that the December 30, 1987, transfer of title was not subject to use tax under § 4(a) of the Use Tax Act (UTA), MCL 205.94(a); MSA 7.555(4)(a), because of operation of the sales tax exemption. On March 6, 1991, the Tax Tribunal adopted the proposed opinion and judgment as its final decision.

II

Respondent argues on appeal that the Tax Tri-

bunal erred in ruling that the transfer of the title of the vehicle to petitioner was exempt from use tax pursuant to § 4(a) of the UTA. We agree.

In the absence of fraud, we review decisions of the Tax Tribunal to determine whether the tribunal made an error of law or adopted a wrong legal principle. *Kivela v Dep't of Treasury,* 200 Mich App 545, 547; 505 NW2d 11 (1993); *Gillette Co v Dep't of Treasury,* 198 Mich App 303, 306; 497 NW2d 595 (1993). The factual findings of the tribunal will be upheld if they are supported by competent, material, and substantial evidence on the entire record. Const 1963, art 6, § 28; *Kivela, supra.*

### III

The use tax is an excise tax imposed for the "privilege of using, storing, or consuming tangible personal property in this state." MCL 205.93(1); MSA 7.555(3)(1). Section 3(2) of the UTA, MCL 205.93(2); MSA 7.555(3)(2), specifically addresses the transfer of vehicles:

> The tax imposed by this section for the privilege of using, storing, or consuming a vehicle, ORV, mobile home, aircraft, snowmobile, or watercraft shall be collected before the transfer of the vehicle, ORV, mobile home, aircraft, snowmobile, or watercraft . . . . The tax on a vehicle, ORV, snowmobile, and watercraft shall be collected by the secretary of state before the transfer of the vehicle, ORV, snowmobile, or watercraft registration.

Further, § 3(3) of the UTA, MCL 205.93(3); MSA 7.555(3)(3), sets forth specific exemptions to the use tax for Michigan vehicle transfers:

> The following transfers or purchases are not subject to use tax:

(a) When the transferee or purchaser is the spouse, mother, father, brother, sister, or child of the transferor.

(b) When the transfer is a gift to a beneficiary in the administration of an estate.

(c) When a vehicle . . . that has once been subjected to the Michigan sales or use tax is transferred in connection with the organization, reorganization, dissolution, or partial liquidation of an incorporated or unincorporated business and the beneficial ownership is not changed.

(d) When an insurance company licensed to conduct business in this state acquires ownership of a late model distressed vehicle . . . through payment of damages in response to a claim or when the person who owned the vehicle before the insurance company reacquires ownership from the company as part of the settlement of the claim.

Section 3(2) of the UTA requires use tax to be paid with respect to each transfer of a vehicle title other than those transfers for resale by registered dealers. See also 1979 AC, R 205.135(1).[1] However, the levy of the use tax is limited by the specific vehicle transfer exemptions contained within MCL 205.93(3); MSA 7.555(3)(3), and the twenty-four exemptions contained within MCL 205.94; MSA 7.555(4). See generally *ADVO-Systems, Inc v Dep't of Treasury,* 186 Mich App 419, 421-423; 465 NW2d 349 (1990); *Tercheck v Dep't of Treasury,* 171 Mich App 508, 510-511; 431 NW2d 208 (1988). In canceling petitioner's use tax assessment, the Tax Tribunal relied on the "sales tax" exemption found in MCL 205.94(a); MSA 7.555(4)(a).

[1]

The use tax applies on the transfer of vehicles, aircraft, watercraft, and snowmobiles between persons other than for resale by registered dealers. The tax shall be collected by the Michigan secretary of state before the transfer of any vehicle title or watercraft or snowmobile registration.

Tax exemptions are strictly construed. See *Edison v Dep't of Revenue*, 362 Mich 158, 162; 106 NW2d 802 (1961); *ADVO-Systems, supra* at 423. MCL 205.94(a); MSA 7.555(4)(a) provides an exemption for property for which sales tax is paid:

> The tax levied shall not apply to:
> (a) Property sold in the state on which transaction a tax is paid under the general sales tax act, Act No. 167 of the Public Acts of 1933, as amended, being sections 205.51 to 205.78 of the Michigan Compiled Laws, if the tax was due and paid on the retail sale to a consumer.

The two acts are complementary in that property on which sales tax is paid is not subject to use tax. *Nat'l Bank of Detroit v Dep't of Revenue*, 334 Mich 132, 141; 54 NW2d 278 (1952); *Terco, Inc v Dep't of Treasury*, 127 Mich App 220, 226; 339 NW2d 17 (1983). However, the sales tax exemption is inapplicable to isolated transactions not subject to the sales tax. *Terco, supra* at 225. See also 1979 AC, R 205.13(1).[2]

In the present case, we agree with respondent that the transfer of the vehicle title from Nemes to petitioner did not fall within the sales tax exemption to the use tax. Unlike the original purchase of the vehicle, the subsequent transfer of title occurred without the payment of any consideration by petitioner and did not involve a retail seller. Under these circumstances, the transfer was not subject to sales tax and was not exempt from use tax.

Reversed.

---

[2] Sales at retail shall not include an isolated transaction made other than in the ordinary course of repeated and successive transactions of a like character.