SAMONEK v NORVELL TOWNSHIP

Docket No. 147724. Submitted April 21, 1994, at Grand Rapids.
Decided December 19, 1994, at 9:15 A.M.

Sara and James Samonek petitioned the Tax Tribunal for review
of property tax assessments for 1988, 1989, and 1990 by Norvell
Township on parcels of farmland owned separately by the
petitioners. In determining the true cash value of the parcels,
the Tax Tribunal refused to consider the sale prices of similar
parcels conveyed by quitclaim deed, acquired from the Federal
Land Bank, or sold at auction. Sara Samonek appealed with
respect to the assessments for all three tax years, and James
Samonek appealed with respect to the assessments for 1988 and
1989.

The Court of Appeals *held:*

1. The sales-comparison or market approach to valuation, as
used in this case, should indicate true cash value through an
analysis of recent sales of comparable properties, a comparison
with the subject property, and an adjustment of the sale prices
of comparable properties to reflect differences from the subject
property. Here, the Tax Tribunal erred in rejecting evidence of
the transaction involving the conveyance by quitclaim deed.
The fact that the transaction involved a quitclaim deed is
relevant to the persuasiveness of such evidence, not to its
admissibility.

2. The Tax Tribunal also erred in rejecting evidence of the
Federal Land Bank and auction sales. Pursuant to MCL
211.27(1); MSA 7.27(1), an assessor may not consider forced
sales, but may consider sales at auction when those sales have
become a common method of acquisition in the jurisdiction for
the class of property being valued, provided that the auctions
are not part of a liquidation of the sellers' assets in bankruptcy
and the sellers are able to use common marketing techniques
to obtain the usual selling prices for the properties. The Tax
Tribunal failed to determine whether the Federal Land Bank
transaction was a forced sale and whether the auction sales
were a common method of acquisition in the township.

Affirmed in part, reversed in part, and remanded.

*Thomas K. Ellis,* for the petitioners.

*Brian E. Thiede,* for the respondent.

Before: CORRIGAN, P.J., and GRIFFIN and M. W. DRAKE,* JJ.

GRIFFIN, J. Petitioners appeal as of right from a judgment of the Michigan Tax Tribunal affirming the property tax assessments on petitioners' respective parcels of farmland for 1988, 1989, and 1990. We affirm in part and reverse in part. In doing so, we hold that the Tax Tribunal must consider the sales prices of comparable parcels of property not sold at auction or forced sale in determining the true cash value of a subject property.

I

The property consists of 385.727 acres of farmland divided into four separate parcels. Petitioner Sara Samonek owns parcels 20-10-251-001-00 (45.2 acres), 20-10-276-001-00 (78.12 acres), and 20-10-400-001-00 (158.65 acres). Petitioner James Samonek, Sara's father, owns parcel 20-01-251-003-00 (103.76 acres). Sara Samonek's property is located approximately four miles from her father's property.

The Tax Tribunal found the true cash value of parcel 20-10-251-001-00 to be $38,000 for 1988, $39,000 for 1989, and $34,000 in 1990. The true cash value of parcel 20-10-276-001-00 was found to be $68,000 for 1988, $68,000 in 1989, and $62,000 in 1990. Finally, the true cash value of parcel 20-10-400-001-00 was found to be $176,000 for 1988, $176,000 for 1989, and $162,000 for 1990. Petitioner James Samonek only challenges the true cash value determination of his parcel for 1988

_____

* Circuit judge, sitting on the Court of Appeals by assignment.

and 1989. The Tax Tribunal found the true cash value of parcel 20-01-251-003-00 to be $60,000 for 1988 and $62,000 for 1989.

The true cash value of the property was initially determined by respondent's assessor in reliance on the county equalization land value grids for 1988, 1989, and 1990. The grids were based on studies done by the Jackson County Equalization Department of land sales within each township from 1986 to 1989. At the Tax Tribunal hearing, petitioners attempted to challenge their assessments by introducing evidence of the sales prices of a number of comparable properties in the area that were not considered by the equalization department.

Petitioners' proofs established that James Samonek purchased a large tract of nearby farmland from the Federal Land Bank for $500 an acre in 1986. The property had been acquired from its previous owners through foreclosure or repossession and had been purchased pursuant to a land contract. The property was advertised for sale for over one year before being purchased by James Samonek. James Samonek also testified that his attorney purchased two hundred acres of nearby farmland for $100,000, or $500 an acre in 1987.

Similarly, James Samonek noted that farmland located approximately five miles west of Sara Samonek's property sold for less than $500 an acre in 1987. The property was sold at an auction after being listed on the market for several months. James Samonek also noted that the property was located on a highway, while Sara Samonek's property was situated on a two-lane county road. Further, the property was much more suitable for development purposes.

James Samonek stated that, more recently, an auction of approximately three thousand acres of

farmland was held in the Grass Lake/Norvell Township area. The land was divided into twenty-five parcels and sold at auction after the owners declared bankruptcy. The parcels sold for an average price of approximately $619 an acre. James Samonek also indicated that he purchased approximately 179.7 acres at the same auction in 1990. The property was located six miles from Sara Samonek's property and sold for approximately $500 an acre.

At the close of petitioners' proofs, respondent's assessor, Wayne Russler, attempted to explain why these transactions were not considered by the county equalization office. Regarding the 1987 purchase of two hundred acres by James Samonek's counsel, Russler noted that the purchase was effectuated by a quitclaim deed. Russler testified that the equalization department often ignores quitclaim deed sales because such transactions often do not reflect true market value. Similarly, Russler indicated that James Samonek's 1986 Federal Land Bank purchase was not considered because property bought at these sales are often purchased for less than true market value. Russler could not explain why the other transactions were not considered.

Following the hearing, the Tax Tribunal affirmed respondent's assessments of petitioners' property in a proposed opinion and judgment entered on November 18, 1991. The Tax Tribunal disregarded the comparable land sales offered by petitioners as questionable "arm's length" transactions. Further, the Tax Tribunal found that the assessor's method was a more credible and better indicator of value in the present case. On December 20, 1991, the Tax Tribunal adopted the proposed opinion and judgment as its final decision.

II

This Court reviews decisions of the Tax Tribunal to determine whether the tribunal made an error of law or adopted a wrong legal principle. *Daguanno v Dep't of Treasury*, 203 Mich App 130, 133; 512 NW2d 32 (1993); *Kivela v Dep't of Treasury*, 200 Mich App 545, 547; 505 NW2d 11 (1993). The factual findings of the tribunal will be upheld if they are supported by competent, material, and substantial evidence on the entire record. Const 1963, art 6, § 28; *Daguanno, supra.*

The taxpayer has the burden of proof to establish the true cash value of the property. MCL 205.737(3); MSA 7.650(37)(3). True cash value is synonymous with fair market value and is commonly determined by three different approaches: (1) cost less depreciation, (2) sales comparison, and (3) capitalization of income. *Meadowlanes Ltd Dividend Housing Ass'n v City of Holland*, 437 Mich 473, 484-485; 473 NW2d 636 (1991); *Jones & Laughlin Steel Corp v City of Warren*, 193 Mich App 348, 352; 483 NW2d 416 (1992). Regardless of the approach, the value determined must represent the usual price for which the property would sell. *Meadowlanes, supra* at 485; *Jones & Laughlin, supra* at 353.

III

On appeal, petitioners first claim that the Tax Tribunal erred in disregarding the sales price of a similar parcel of property sold by quitclaim deed in 1987 because it was a questionable "arm's length" transaction. In determining the true cash value of petitioners' property, the sales-comparison or market approach was utilized in the present case. The market approach "indicates true cash

value by analyzing recent sales of similar properties, comparing them with the subject property, and adjusting the sales price of the comparable properties to reflect differences between the two properties." *Meadowlanes, supra* at 485, n 19; *Antisdale v City of Galesburg,* 420 Mich 265, 276, n 1; 362 NW2d 632 (1984). However, MCL 211.27(1); MSA 7.27(1) provides that an assessor may not consider a forced sale or most sales at public auction:

> As used in this act, "cash value" means the usual selling price at the place where the property to which the term is applied is at the time of assessment, being the price that could be obtained for the property at private sale, and not at auction sale except as otherwise provided in this section, or at forced sale. The usual selling price may include sales at public auction held by a nongovernmental agency or person when those sales have become a common method of acquisition in the jurisdiction for the class of property being valued. The usual selling price does not include sales at public auction where the sale is part of a liquidation of the seller's assets in a bankruptcy proceeding or where the seller is unable to use common marketing techniques to obtain the usual selling price for the property. . . .

After applying these principles in the present case, we hold that the Tax Tribunal erred as a matter of law in rejecting the evidence. In Michigan, like many other jurisdictions, the selling price of a particular piece of property is evidence of the value of that property. *Antisdale, supra* at 278. Although not conclusive, such evidence is nevertheless relevant in determining the "usual selling price" of similar properties and must be considered by the tribunal in the absence of an auction or forced sale. See *Jones & Laughlin, supra* at 354;

MCL 211.27(1); MSA 7.27(1). Further, while the 1987 sale occurred as the result of a quitclaim deed sale, such circumstances are important only to the weight of the evidence, not its admissibility.

The Tax Tribunal also erred in summarily rejecting the Federal Land Bank and auction sales offered by petitioners without first determining whether such evidence could be considered under MCL 211.27(1); MSA 7.27(1). On remand, the tribunal is instructed to determine whether the auction sales occurred as "part of a liquidation of the seller's assets in a bankruptcy proceeding" or were a "common method of acquisition" for large parcels of farmland in the area. The tribunal is further instructed to determine whether the Federal Land Bank sale was a "forced sale."

Finally, we decline to review petitioners' remaining challenges to the valuation of their property because they have failed to cite any supporting authority for their claims. It is well settled that this Court will not search for authority to support a party's position. *Winiemko v Valenti*, 203 Mich App 411, 419; 513 NW2d 181 (1994); *Patterson v Allegan Co Sheriff*, 199 Mich App 638, 640; 502 NW2d 368 (1993).

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.