# STATE OF MICHIGAN

# COURT OF APPEALS

JD NORMAN INDUSTRIES,

      Petitioner-Appellant,

v

CITY OF LESLIE,

      Respondent-Appellee.

UNPUBLISHED
June 23, 2015

No. 321314
Tax Tribunal
LC No. 00-436350

Before: RIORDAN, P.J., and DONOFRIO and BECKERING, JJ.

PER CURIAM.

Petitioner, JD Norman Industries, appeals as of right the 2012 tax assessment for personal, industrial property that it purchased in its asset purchase of Len Industries, Inc. (Len Industries), in November 2011. We affirm.

## I. FACTUAL BACKGROUND

At issue in this tax appeal is the true cash and taxable value of parcel 33-17-14-90-900-220 (parcel 220), which is personal, industrial property. Petitioner purchased this equipment during its asset purchase of Len Industries in November 2011. The parties dispute the value of this personal property. While respondent assessed the true cash value of the personalty as $6,219,900 and the taxable value as $3,109,950—based on the historic cost of the property minus depreciation—petitioner disputed these calculations. Petitioner claimed that the value of the property should be calculated based on the price it paid when it purchased the personalty from Len Industries. As laid out in the asset purchase agreement, the amount of the total equipment purchased was $6,632,250. Petitioner concluded that of the $6,632,250, the value of the relevant personal, industrial property subject to tax in the city of Leslie was $1,672,000.

Respondent, however, contended that petitioner's argument was flawed for several reasons. It argued that the sale price may be relevant in terms of the value of the business; that price was not relevant in terms of the value of the property for tax purposes. Respondent proposed that its methodology of using the historic value of the personal property, less depreciation, was the most reliable indicator of its value.

Petitioner initiated this action, first in the small claims division and then in front of the entire tribunal. At the hearing, petitioner's first witness, Teresa DeBaeke—a former employee of Len Industries and a current employee of petitioner—testified that Len Industries retained

Conway McKenzie to locate a purchaser in 2008. She conceded that Len Industries was losing money, and that it was struggling due to the financial situation of the automotive industry. She also testified about an appraisal that valued the orderly liquidation value of the personal property at $6,632,250.[1] She testified that of that value, $1,672,000 represented the value of the property subject to tax for the city of Leslie.

Gary Wilhite, the director of finance for petitioner, testified that in buying Len Industries, petitioner was buying a business. He detailed the many factors petitioner looked at before entering into the asset purchase, such as earning capacity, client mix, location, and management skill. When asked if there was a limit petitioner was willing to pay for the assets, Wilhite responded, "Well, I think our offer was our offer. We weren't willing to pay anything higher than that, and certainly through negotiation there may have been some issues that came up. That was the number that we came up with that we were willing to pay."

Charles Zemla, the assessor for the city of Leslie and expert in the assessment of personal property, testified on behalf of respondent. He testified that he relied on historic cost minus depreciation, to value the property. He used depreciation techniques and state tax commission multipliers through BS&A software. Zemla testified that no additional depreciation was taken into account, such as the condition of the automotive industry.

The tribunal concluded that petitioner did not meet its burden of proof in establishing that respondent's assessed value of the property was in error. The tribunal determined, after an independent assessment, that respondent correctly assessed that the true cash value of the property was $6,219,900 and the taxable value was $3,109,950. Petitioner now appeals.

## II. STANDARD OF REVIEW

Two issues are now raised on appeal. First is an appraisal petitioner wanted to enter into evidence, which it claimed substantiated its valuation of the personal property. Second is petitioner's contention that the tribunal erred in its assessment of the true cash value of the personal property. In support of its contention, petitioner offers a valuation of its purchase of Len Industries.

"A proceeding before the tribunal is original and independent and is considered de novo." MCL 205.735a(2). This Court's review of a final decision of the tribunal is limited. *Detroit Lions, Inc v City of Dearborn*, 302 Mich App 676, 691; 840 NW2d 168 (2013). "Unless fraud is alleged, an appellate court reviews the decision for a misapplication of the law or adoption of a wrong principle." *Podmajersky v Dep't of Treasury*, 302 Mich App 153, 162; 838 NW2d 195 (2013) (quotation marks and citation omitted). "This Court may review the tribunal's rulings regarding evidentiary issues if they involve errors of law." *Georgetown Place Co-op v City of Taylor*, 226 Mich App 33, 239; 572 NW2d 232 (1997). The appellant bears the burden of proof in an appeal from the tribunal. *Podmajersky*, 302 Mich App at 162. "The MTT's factual

---

[1] As will be discussed *infra*, the trial court did not admit the appraisal at the hearing.

findings are conclusive if they are supported by competent, substantial, and material evidence on the whole record." *Detroit Lions, Inc*, 302 Mich App at 691.

## III.  APPRAISAL

Petitioner has failed to demonstrate that reversal is warranted based on the tribunal's decision not to admit petitioner's appraisal into evidence.

GoIndustry DoveBid Valuations, Inc. (Go-Dove) conducted an appraisal for petitioner in September 2011, in anticipation of petitioner's asset purchase of Len Industries.  Go-Dove concluded that the machinery and equipment of Len Industries had a forced liquidation value of $4,916,950, and an orderly liquidation value of $6,632,250.  The trial court excluded the appraisal because it found that petitioner failed to provide the proper foundation, as the authors of the appraisal were not present to testify.  The court also found that the appraisal was not relevant in determining the true cash value of the property.  Petitioner argues that the appraisal is relevant and the tribunal should have admitted it.

"To ensure that a petitioner is afforded due process, hearings in the Tax Tribunal are conducted in accordance with the provisions of Chapter 4 of the Administrative Procedures Act, M.C.L. § 24.271 *et seq. . . ."  Georgetown Place Co-op*, 226 Mich App at 51-52.  Thus, the parties are afforded the opportunity to present evidence and arguments regarding issues of fact, cross-examine witness, and submit rebuttal evidence.  *Id.* at 52.  To that end, while "the tribunal may admit and give probative effect to evidence of a type commonly relied upon by reasonably prudent men in the conduct of their affairs" the "rules of evidence must be followed as far as practicable[.]"  *Id.*; MCL 205.746.

Petitioner claims that it did not offer the appraisal for the truth of the matter asserted, i.e., as proof of the true value of the equipment.  Rather, it claims the appraisal was offered for a non-hearsay purpose, namely, "to corroborate the facts used by Gary Wilhite in making a purchase offer for the assets of Len Industries."  Petitioner explains that the appraisal set forth the complete description of the equipment and corroborated pertinent facts in the private sale transaction.[2]

However, significant evidence was adduced regarding the purchase of the property, including the factors petitioner relied on in making the offer.  Wilhite testified that petitioner relied on the 12-month trailing earnings statement to determine what type of income the business could generate, the client mix, the location, and the management skill of Len Industries.  The asset purchase agreement was admitted into evidence, and it not only detailed the purchase price, but also included a working capital statement.  Moreover, an exhibit was admitted at the hearing and is a schedule of the personal equipment in the asset purchase, with the values derived from the appraisal.  Likewise, another exhibit admitted summarized the equipment subject to tax by

---

[2] To the extent that in its reply brief, petitioner attempts to assert a different purpose for admission, it has abandoned that argument. *Blazer Foods, Inc v Rest Properties, Inc*, 259 Mich App 241, 252; 673 NW2d 805 (2003).

the city of Leslie. Based on this exhibit, DeBaeke testified that $1,672,000 of the assets were subject to tax in the city of Leslie.

Thus, petitioner proffered significant evidence regarding the factors it relied on in making the purchase and in formulating its proposed offer, as well as the appraised value of the property. Thus, the Go-Dove appraisal was repetitious of Wilhite's testimony, DeBaeke's testimony, as well as exhibits admitted at trial. As such, the tribunal did not err in excluding it. See MCL 205.746 ("Irrelevant, immaterial, or unduly repetitious evidence may be excluded.").

Petitioner, however, insists that the information in the appraisal was not repetitious or cumulative, as the degree of detail in the appraisal was contained in no other exhibit. Petitioner asserts that, unfairly, it was prevented from eliciting information regarding specific equipment described in the appraisal, which effectively prevented it from demonstrating the depressed value of the machinery and equipment. Petitioner now claims that the basis for admitting the appraisal was to *corroborate* Wilhite's testimony. If so, petitioner was free to ask Wilhite specific, detailed questions about the equipment at issue. See MRE 602 (a party may elicit testimony from any witness with personal knowledge). In fact, if Wilhite was unaware of the detailed nature of the equipment, then petitioner's professed basis for admission of the appraisal—to corroborate Wilhite's testimony—is disingenuous.

Therefore, petitioner has not demonstrated error requiring reversal in the tribunal's decision to exclude the appraisal.

## IV. TRUE CASH VALUE

Next, petitioner contends the tribunal erred in assessing the true cash value of the property. The tribunal did not err in assessing the true cash value of the property at $6,219,900 and the taxable value at $3,109,950.[3]

"Like real property, tangible personal property must be taxed on the basis of its true cash value." *Detroit Lions, Inc*, 302 Mich App at 702. The petitioner bears the burden of proof in establishing the true cash value of personal property. *Id.* "The burden of proof encompasses both the burden of persuasion, which never shifts during the course of the hearing, and the

---

[3] In its reply brief, petitioner asserts, for the first time, several factual errors in the tribunal ruling, such as the conflation of the orderly liquidation value and the forced liquidation value, the identification of $6,672,000 as the purchase price, and the tribunal's reference to the "bank appraisal." However, "[r]eply briefs must be confined to rebuttal of the arguments in the appellee's . . . brief[.]" MCR 7.212(G). These arguments were not raised in petitioner's initial brief, nor addressed in respondent's appellate brief. "Reply briefs may contain only rebuttal argument, and raising an issue for the first time in a reply brief is not sufficient to present the issue for appeal." *Blazer Foods, Inc*, 259 Mich App at 252. See also *Kinder Morgan Michigan, LLC v City of Jackson*, 277 Mich App 159, 174; 744 NW2d 184 (2007). Thus, they are not properly before this Court.

burden of going forward with evidence, which may shift to the opposing party." *Forest Hills Co-operative*, 305 Mich App at 588. The tribunal must apply its expertise to the facts of each case to make and independent determination of the true cash value of the property at issue. *Detroit Lions, Inc*, 302 Mich App at 702.

MCL 211.27(1) defines "true cash value" as "the usual selling price at the place where the property to which the term is applied is at the time of assessment, being the price that could be obtained for the property at private sale, and not at auction sale . . . ., or at forced sale." "In general, true cash value is synonymous with fair market value." *Forest Hills Co-operative*, 305 Mich App at 587. Although the tribunal should consider different approaches in determining the true cash value of the property, "correlating, reconciling, and weighing the values derived under various approaches, the tribunal's duty is to determine an approach that most accurately reflects the value of the property." *Id.* The tribunal is free to reject both parties' valuation theories. *Id.* Though the tribunal may not automatically accept a respondent's assessment, it "may adopt the assessed valuation on the tax rolls as its independent finding of true cash value when competent and substantive evidence supports doing so, as long as it does not afford the original assessment presumptive validity." *Id.* at 587-588 (quotation marks and citation omitted).

Petitioner's primary contention is that the tribunal erred in declining to consider the valuation by the parties in the recent sale of the property, which occurred when petitioner purchased all of the assets of Len Industries. "The rule in Michigan, as in many other states, is that the selling price of a particular piece of property is not conclusive as evidence of the value of that piece of property." *Antisdale v City of Galesburg*, 420 Mich 265, 278; 362 NW2d 632 (1984). See also *Professional Plaza, LLC v Detroit*, 250 Mich App 473, 476; 647 NW2d 529, 530-31 (2002) ("Evidence of the selling price of property" may be "relevant in determining the taxable value of property."). As the Court in *Antisdale* explained:

> The Legislature has commanded that property be assessed as its 'usual selling price'. The most obvious deficiency in using the sales price of a piece of property as conclusive evidence of its value is that the ultimate sale price of the property, as a result of many factors, personal to the parties or otherwise, might not be its 'usual' price. The market approach to value has the capacity to cure this deficiency because evidence of the sales prices of a number of comparable properties, if sufficiently similar, supports the conclusion that factors extrinsic to the properties have not entered into the value placed on the properties by the parties. Nevertheless, if it can be shown that the sale price each of the comparable properties has been determined by a flawed method the result of the market approach to valuation will also be flawed. [420 Mich at 278-279.]

Pursuant to MCL 211.27(6), "[T]he purchase price paid in a transfer of property is not the presumptive true cash value of the property transferred." "Purchase price" is defined as "the total consideration agreed to in an arms-length transaction and not at a forced sale paid by the purchaser of the property[.]" MCL 211.27(6).

Petitioner, however, raises several arguments why the tribunal should have considered the sale. Petitioner characterizes the sale of Len Industries as an arm's length transaction between two sophisticated parties. See MCL 211.27(1) and (6). Petitioner further highlights the

fact that Len Industries hired Conway McKenzie in 2008 and that over a three-year period, it sifted through seven or eight different offers before entering into the asset purchase agreement with petitioner in 2011. Petitioner relies on this information to bolster its claim that this was a typical arms-length sale, and the tribunal should have considered it when determining the true cash value of the personal property.

Petitioner's argument rests on a flawed premise, namely, that a purchase price is necessarily determinative of the true cash value of personal property. While the purchase price may be *evidence* of true cash value if it is an arms-length transaction, it is not *determinative* of true cash value. *Antisdale,* 420 Mich at 278. Significantly, the sale of the personal property in this case occurred in the context of the asset purchase of Len Industries. As Wilhite testified, petitioner was not buying individual assets, but was buying a business. Thus, the personal property sale must be evaluated in context of the sale of the entire business, as the tribunal recognized.

Further, petitioner ignores evidence that Len Industries was a struggling business, which impacts whether the resulting asset purchase price was representative of the true cash value of the personal property. DeBaeke admitted that the economic conditions in 2008 were difficult, and that Len Industries was "absolutely" losing money in 2008, 2009, and 2010. In fact, on appeal, petitioner concedes that Len Industries, an automotive supplier, was affected by the "financial meltdown of the automotive industry" due to the "much publicized bankruptcies of General Motors and Chrysler. Even petitioner's appraisal assesses the personal property in terms of orderly liquidation value and forced liquidation value. Petitioner provided no evidence of, nor supporting authority for, a conclusion that such terms are synonymous with true cash value. In fact, these terms appear indicative of a forced sale, and MCL 211.27 specifically precludes consideration of private sales that occur as a forced sale. The tribunal found that "the definition of liquidation value is entirely different than market value," and petitioner fails to demonstrate any error in that finding.

Thus, petitioner has not established that the tribunal erred in finding that the asset purchase of Len Industries was not representative of the true cash value of the personal property. MCL 211.27(1). Nevertheless, citing to *Jones & Laughlin Steel Corp v City of Warren*, 193 Mich App 348, 353-354; 483 NW2d 416 (1992), petitioner contends that the tribunal erred because it conclusively rejected evidence of the sale, which is an error of law. In *Jones*, we held that "the tribunal correctly noted that the sale price of a particular piece of property does not control its determination of the value of that property," but that "the tribunal's opinion that the evidence 'has little *or no* bearing' on the property's earlier value suggests that the evidence was rejected out of hand. Such cursory rejection would be erroneous." *Id.* at 354 (emphasis in original). We recognized that aspects of the sale, such as the passage of time, are relevant in terms of weight and credibility, not admissibility. *Id.*; *Samonek v Norvell Tp*, 208 Mich App 80, 85-86; 527 NW2d 24 (1994).

The tribunal's ruling comported with *Jones*. The tribunal recognized that "the sale price of personal property is not *necessarily* synonymous with market value." In other words, the tribunal recognized that while the sale price may, under circumstances, be indicative of true cash value, that is not always the case. See *Antisdale*, 420 Mich at 278. The tribunal concluded that the reasons underlying the asset purchase agreement in this case did not support petitioner's

contentions regarding the market value of the personal property at issue. In other words, the tribunal found that petitioner's evidence "regarding the sale of the personal property does not rise to the level of comparative sales analysis that would result in the indication of market value" and that petitioner's "purchase price was not applied to the market for this valuation appeal." The tribunal concluded, "Therefore, Petitioner's sale price of the subject's personal property is given no weight and credibility in the independent determination of value for the subject parcels." The tribunal did not dismiss out of hand the sales price of the personal property. Instead, the tribunal considered the sale, the deficiencies in petitioner's evidence, and ultimately concluded that the sales price was not indicative of value. *Jones*, 193 Mich App at 354; *Samonek*, 208 Mich App at 85-86. We will not disturb the tribunal's findings regarding the credibility of the evidence. *Detroit Lions, Inc*, 302 Mich App at 703.

Alternatively, petitioner contends that respondent's evaluation was flawed, as was the tribunal's opinion, because both failed to account for the economic conditions at the time of the tax assessment of the personal property. Petitioner contends, "The value of the equipment based on the existing use of the equipment in the automotive industry was decreased as a result of the bankruptcies and present economic condition in the automotive industry." Petitioner asserts that Zemla, the city's assessor, gave no consideration to the fact that Chrysler and General Motors filed for bankruptcy and Zemla had no information on whether this was a distressed sale.

In effect, petitioner is arguing that the tribunal should have presumptively concluded that because the automotive industry collapsed in 2008, the equipment and machinery sold and assessed for the 2012 tax year was necessarily depressed. Yet, petitioner highlights no testimony at the hearing regarding how the "financial meltdown" of the automotive industry actually affected the value of the personal property.[4] Nor has petitioner highlighted evidence in its exhibits that the condition of the automotive industry severely affected the value of personal property. See, e.g., Mich Admin Code, R 792.10237(1) (a party's valuation disclosure should contain "the party's value conclusions and data, valuation methodology, analysis, or reasoning."). See also *Derderian*, 263 Mich App at 388. Instead, plaintiff relies on vague and conclusory statements that the circumstances of the automotive industry in 2008 necessarily affected the value of the personal property as of 2012, with no supporting evidence. As such, petitioner has not demonstrated error in the tribunal's finding that petitioner failed to meet its burden of proof. *Forest Hills Co-operative*, 305 Mich App at 588.[5]

---

[4] " 'Facts stated must be supported by specific page references to the transcript, the pleadings, or other document or paper filed with the trial court.' MCR 7.212(C)(7). We will not search the record for factual support for [petitioner's] claims." *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 388; 689 NW2d 145 (2004).

[5] Petitioner relies on *Safran Printing Co v City of Detroit, Wayne Co*, 88 Mich App 376, 382; 276 NW2d 602 (1979). However, in that case, it was "undisputed that the property [was] obsolete, inefficient, and could not be sold as" for its existing use. Petitioner highlights no such evidence in the instant case.

Lastly, the tribunal properly reached an independent determination of the true cash value of the property. *Forest Hills Co-operative*, 305 Mich App at 587. The tribunal stated that it had sufficient evidence and testimony to "arrive at an independent determination of value for the subject personal property." The tribunal found that "based upon independent review of the valuation evidence, that Respondent's record card evidence is reliable and supports the current assessed and taxable values." The tribunal did not adopt a wrong principle or misapply the law, and its findings were supported with competent, substantial, and material evidence on the whole record. *Forest Hills Co-operative*, 305 Mich App at 588; *Podmajersky*, 302 Mich App at 162; *Detroit Lions, Inc*, 302 Mich App at 691, 704-705.

## V. CONCLUSION

We find no error warranting reversal in the tribunal's decision to exclude the appraisal. Nor do we find any error in the tribunal's assessment of the true cash value and taxable value of the personal property. We affirm.

/s/ Michael J. Riordan
/s/ Pat M. Donofrio
/s/ Jane M. Beckering