*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ATIF NASIM and PROFAX REALTY, LLC,

Petitioners-Appellants,

v

CITY OF HIGHLAND PARK,

Respondent-Appellee.

UNPUBLISHED
June 25, 2019

No. 343019
Tax Tribunal
LC No. 17-001551-TT

Before: TUKEL, P.J., and SERVITTO and RIORDAN, JJ.

PER CURIAM.

Petitioners appeal as of right the Tax Tribunal's final opinion and judgment affirming a true cash valuation and tax assessment of real property by respondent. Petitioners contend on appeal that the tribunal erred by affirming respondent's valuation of the real property above the actual sale price paid for the property at a foreclosure auction. We disagree.

"This Court's review of a decision by the Tax Tribunal is limited." *Trinity Health-Warde Lab, LLC v Pittsfield Charter Twp*, 317 Mich App 629, 632; 895 NW2d 226 (2016), citing *Mich Props, LLC v Meridian Twp*, 491 Mich 518, 527; 817 NW2d 548 (2012). "Absent a claim of fraud, [an appellate court] reviews decisions from the Tax Tribunal for the misapplication of law or the adoption of a wrong legal principle." *SBC Health Midwest, Inc v Kentwood*, 500 Mich 65, 70; 894 NW2d 535 (2017), citing *Wexford Med Group v Cadillac*, 474 Mich 192, 201; 713 NW2d 734 (2006). This Court reviews factual findings of the tribunal to determine whether they are supported by "competent, material, and substantial evidence on the whole record," and reviews "de novo the tribunal's interpretation of a tax statute." *SBC Health*, 500 Mich at 70 (quotation marks and citations omitted). "Though this Court will generally 'defer to the Tax Tribunal's interpretation of a statute that it is delegated to administer,' that deference will not extend to cases in which the tribunal makes a legal error." *Id.*, quoting *Wexford*, 474 Mich at 221.

Petitioners first contend that the tribunal erred by finding that the value of the subject property was greater than the price paid for it at auction—$52,400. The very first paragraph of

-1-

petitioners' argument, however, references all of the law necessary to dispel their contentions. It cites MCL 211.27(1) which provides:

> "true cash value" means the usual selling price at the place where the property to which the term is applied is at the time of assessment, being the price that could be obtained for the property at private sale, and *not at auction sale* except as otherwise provided in this section, *or at forced sale*. The usual selling price may include sales at public auction held by a *nongovernmental* agency or person if those sales have become a common method of acquisition in the jurisdiction for the class of property being valued. [Emphasis added.] See also *Samonek v Norvell Twp*, 208 Mich App 80, 85; 527 NW2d 24 (1994) (explaining that MCL 211.27(1) prohibits a property assessor from considering forced sales and most sales at public auction).

"[C]aselaw treats the concept of true cash value as being synonymous with 'fair market value.' " *Gardner v Dep't of Treasury*, 498 Mich 1, 8; 869 NW2d 199 (2015). The term "refers to the probable price that a willing buyer and a willing seller would arrive at through arm's length negotiation." *Id*. at 8-9 (quotation marks omitted), quoting *Detroit Lions, Inc v Dearborn*, 302 Mich App 676, 696; 840 NW2d 168 (2013).

> "[T]o determine true cash value, *the property must be assessed at its highest and best use*." *Huron Ridge, LP v Ypsilanti Twp*, 275 Mich App 23, 33; 737 NW2d 187 (2007) (emphasis added). "[T]he concept of 'highest and best use' . . . recognizes that the use to which a prospective buyer would put the property will influence the price that the buyer would be willing to pay for it." [*Great Lakes Div of Nat'l Steel Corp v Ecorse*, 227 Mich App 379, 408; 576 NW2d 667 (1998)]. "The concept . . . is fundamental to the determination of true cash value." *Detroit Lions, Inc*[, 302 Mich App at 697]. "Highest and best use" is defined as " 'the most profitable and advantageous use the owner may make of the property even if the property is presently used for a different purpose or is vacant, so long as there is a market demand for such use.' " *Id*., quoting *Detroit/Wayne Co Stadium Auth v Drinkwater, Taylor & Merrill, Inc*, 267 Mich App 625, 633; 705 NW2d 549 (2005) (quotation marks omitted; citation omitted in *Detroit Lions*). [*Menard, Inc v Escanaba*, 315 Mich App 512, 522; 891 NW2d 1 (2016).]

Fair market value is "commonly determined by three different approaches: (1) cost less depreciation, (2) sales comparison, and (3) capitalization of income." *Samonek*, 208 Mich App at 84 (citations omitted). "Regardless of the approach, the value determined must represent the usual price for which the property would sell." *Id*. (citations omitted). Petitioners have the burden of proof in establishing the true cash value of the subject property. MCL 205.737(3).

In this case, the only evidence provided by petitioners that the true cash value of the subject property should be lower is the sale price of the property at the Wayne County Treasurer's auction. However, as petitioners acknowledge on appeal, MCL 211.27(1) provides that the sale price in this case is not actually evidence of true cash value at all. It is well established that the sale price from a forced sale and public auction by government agencies is

not representative of true cash value. MCL 211.27(1); *Samonek*, 208 Mich App at 85. With neither law nor facts to support their position, petitioners' contention that the true cash value of the subject property should be measured by its sale price at a public foreclosure auction is without merit.

Petitioners next contend that the tribunal erred in relying on the sales-comparison approach because the properties provided by respondent were not, in fact, comparable—or in other words, that the approach was not supported by competent, material, and substantial evidence. Petitioners contend that the sales-comparison approach was not effective because the properties provided for comparison were either leased or otherwise occupied when they were purchased, whereas the subject property was in disrepair and not prepared to be leased at the time of its purchase. Petitioners also contend that the tribunal made an incorrect statement in its proposed opinion about whether the comparable properties were vacant at the time of their sale.

While the tribunal admitted that the proposed opinion and judgment was incorrect about whether the comparable properties were vacant at the time of their sale, it nonetheless found that petitioners had failed to submit evidence with respect to the appropriate market-based adjustment for the occupancies. Simply identifying a factor that the tribunal *could have* considered without further evidence or argument—particularly where petitioner bears the burden of proof to establish the true cash value—was not enough to render the proposed opinion erroneous, and does not establish good cause to justify modifying the opinion.

While identifying a singular factor that may have improved the overall evaluation, petitioners have failed to establish that the properties utilized in the sales-comparison approach were not comparable. All of the properties were industrial, "Class C Manufacturing" buildings of comparable sizes specifically built between 1940 and 1947. Despite petitioners' contention that the buildings used for comparison were not specifically located in Highland Park, Michigan, like the subject property, petitioners have provided neither law nor reason to suggest that the sales-comparison approach is limited to properties within the same municipality. Finding recent, arm's-length sales of sufficiently comparable buildings in the same municipality is sometimes impossible[1] and, in any event, the properties used for comparison in this case are not unreasonably distant from the subject property. Moreover, to the extent that certain properties might benefit from their specific location, that benefit was taken into account via adjustments to the valuation of those properties. Overall, respondent provided substantial evidence that, based upon the three comparison sales, the subject property could be reasonably valued between $7.84 per square foot to $10.83 per square foot. Even so, respondent only assessed $6.06 per square foot for the subject property.

Petitioners have failed to provide a legal basis or otherwise establish that the true cash value of the subject property should be measured by the property's sale price at a public foreclosure auction. Petitioners have further failed to establish that the true cash value calculated

---

[1] Respondent contended that it reviewed sales records of similar properties in Highland Park, but most of them also came out of public foreclosure auctions, and thus, could not be considered for the purpose of determining the subject property's true cash value.

through the sales-comparison approach was unsupported by competent, material, and substantial evidence, or that the ultimate $6.06 per square foot valuation was anything but generous. Absent a legal error or a lack of competent, material, and substantial evidence to support its findings, the decision of the tribunal must be affirmed.

Affirmed.

/s/ Jonathan Tukel
/s/ Deborah A. Servitto
/s/ Michael J. Riordan