*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SUSAN A. GRESSA,

      Petitioner-Appellant,

v

INDEPENDENCE TOWNSHIP,

      Respondent-Appellee.

UNPUBLISHED
November 10, 2022

No. 359545
Tax Tribunal
LC No. 21-000547

Before: GARRETT, P.J., and O'BRIEN and REDFORD, JJ.

PER CURIAM.

Petitioner appeals as of right the Michigan Tax Tribunal's (MTT) final opinion and judgment (FOJ), valuing the true cash value (TCV) of her home (the property) at $515,000, and the state equalized value[1] (SEV), and taxable value (TV) of the property, at $257,500. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner purchased the property in October 2020 for $535,000 in an arm's-length transaction. Shortly after closing, petitioner removed a shed from the property. Petitioner answered a questionnaire from respondent which provided information for tax appraisal purposes. Of relevance, petitioner noted that the property had a generator, a finished basement of approximately 1,500 square feet, and a shed of about 100 square feet. Petitioner asserted she answered this questionnaire the day after she closed on the property and relied on the property's online listing for her answers.

An assessor assessed the property's SEV and TV as $201,400. Petitioner appealed the assessment to the March 2021 Independence Township Board of Review (BOR), and provided a mortgage appraisal at the BOR's request. The BOR increased the SEV and TV to $267,500. The BOR explained that the adjustment was "based upon the appraisal provided by the petitioner." That led to the filing of a petition to the MTT for review in which petitioner alleged that the BOR

---

[1] The SEV is also known as the assessed value.

erred by considering the sale price when changing the property's SEV. Petitioner claimed that she paid too much for the property and argued that the mortgage appraisal did not necessarily indicate the property's TCV. She contended that the BOR's SEV exceeded 50% of the TCV and failed to uniformly assess the property like similar properties. Petitioner asserted that the property's TCV equaled $380,000, rendering the SEV of $190,000.

Petitioner argued that the property's sale price could not be the sole factor used by the assessor or BOR, when determining the property's TCV. Regarding the BOR's reliance on petitioner's mortgage appraisal, petitioner did not include the mortgage appraisal in her petition, and only provided it when requested. When the BOR requested the appraisal, petitioner claimed it unreliable, but the BOR requested petitioner send the appraisal anyway. Petitioner asserted that the BOR based its entire valuation on this appraisal and had no legally permissible reason to change the SEV.

Petitioner submitted a table and commentary highlighting her alleged valuation errors with corrected values for the shed, the basement's smaller square footage, the generator which she brought from her old property, and a corrected value for the property's effective age. Petitioner claimed that the property had structural defects, including broken trusses, a roof problem, and a bat and mice infestation in the attic, all of which necessitated additional costs not properly considered by the assessment.

In response, respondent noted that many of the claimed erroneous valuations were provided by petitioner in her responses to the questionnaire. It pointed out that petitioner never obtained a demolition permit to remove the shed and that petitioner's permit to install the generator listed the generator as new. Respondent agreed to correct the valuation to reflect the proper effective age of the generator, but explained that petitioner had denied entry to determine the generator's age. Respondent asserted that the property's effective age was "reduced to reflect interior remodeling and updates that were completed prior to Petitioner's sale date."

In rebuttal, petitioner argued that the comparable properties she chose were closer matches to the property than those provided by respondent. Petitioner could not find anything requiring a permit to remove the shed. Regarding respondent's reliance on her questionnaire, petitioner argued that she received the questionnaire the day after closing without explanation of its purpose and had filled it out before the shed's removal. Petitioner stated that she relied on the property's online listing for the 1,500-square-foot basement, but the listing overestimated the actual finished square footage of the basement. Petitioner provided proof of the generator's initial installation in her old home in 2016.

The administrative law judge (ALJ) held a hearing in September 2021 and prepared the proposed opinion and judgment (POJ) that proposed valuing the TCV of the property at $515,000, and correspondingly the property's SEV and TV at $257,500. Concerning petitioner's argument that the property was not uniformly assessed, the ALJ noted numerous unknown factors which could impact the property's value that prevented the ALJ from concluding that the property was not uniformly assessed. The ALJ also noted the uniformity requirement of the constitution only applied to the original assessment, which was "very much in line with the values identified in Petitioner's summary[,]" not the later assessments by the BOR or the MTT.

The ALJ agreed that respondent was precluded from relying on sale price alone when assessing the property because such reliance would result in nonuniform assessments. The ALJ, however, explained that "this holds true only for the assessment as originally established by the assessing officer. It does not apply to the [BOR], or the [MTT], which is a quasi-judicial agency charged with finding a property's true cash value when the legality of the assessment is contested." The ALJ stated that the MTT was not bound by the same restrictions imposed on assessors but had the obligation "to make an independent determination of value." The ALJ considered that this Court has "repeatedly held that while not presumptive, actual selling price is relevant in determining 'usual selling price' and must be considered by the [MTT] in the absence of an auction or forced sale[,]" citing *Jones & Laughlin Steel Corp v Warren*, 193 Mich App 348, 354; 483 NW2d 416 (1992), and *Samonek v Norvell Twp*, 208 Mich App 80; 527 NW2d 24 (1994).

Regarding the BOR's reliance on the mortgage appraisal, the ALJ observed that neither respondent nor the MTT were precluded from relying on the appraisal "simply because it was prepared for mortgage purposes." The ALJ agreed with petitioner that the appraisal was not necessarily a reliable indicator of the property's actual TCV, nor conclusive evidence of the property's value. The ALJ concluded that the appraisal had not been provided for the MTT's review, and therefore, the ALJ could not determine its reliability. The ALJ found the BOR's value unsupported by the record, and noted that, while respondent's representative testified that the BOR relied on other comparable sales in addition to the appraisal when assessing the property, respondent's letter to petitioner explaining its reasoning did not support that position, and even if other alleged sales were considered, they were also not provided to the MTT for review.

Based on the evidence provided to the MTT, the ALJ determined that the cost approach was not the best evidence of the property's TCV or usual selling price. The ALJ found the sales comparison or market approach the proper valuation method. The adjusted sales of the comparables provided by petitioner supported the finding that the property was assessed at less than 50% of its TCV by the assessor. "As a result, the [ALJ found] it unnecessary to address Petitioner's argument regarding errors on the property record card." The ALJ explained that petitioner failed to provide the MTT with sufficient detail of her analysis of her comparables and did not explain how the comparables, some of which were over five miles away from the property, were "sufficiently similar to properly be considered not only comparable to, but also competitive with the subject property."

The ALJ focused on the one comparable submitted by both parties which sold for $490,000 in September 2020, and $562,500 in June 2021. The ALJ determined the adjusted sale price of the comparable property equaled $492,500. Because both parties used this comparable—the only one in the property's neighborhood—the ALJ gave it the most weight in the final value determination of the property. Regarding the comparable property's later sale, the ALJ determined that numerous unknown factors could have impacted the comparable's value and should not be given any weight.

The ALJ also found that the sale of the property should be given weight in the final value determination but noted that purchase prices are not presumptive TCVs for properties because many factors impact the determination of a property's sale price. The ALJ opined: "Actual selling price is relevant in determining the 'usual selling price,' however, and 'must be considered by the [MTT] in the absence of an auction or forced sale[,]' " citing *Samonek*, 208 Mich App at 85; *Jones*

*& Laughlin Steel Corp*, 193 Mich App at 348. Petitioner bought the property for $535,000 after the property was on the market for 19 days. The ALJ also considered petitioner's alleged issues with the property and calculated a TCV of $515,000.

Petitioner, in her exceptions to the POJ, asserted that various factual inconsistencies and legal errors existed in the POJ, including that it erroneously: (1) determined that the BOR was not required to adhere to the uniformity requirement because the BOR was not entitled to set the TCV as the property's sale price; (2) failed to note that respondent's representative made a false statement under oath disqualifying the testimony or at least calling it into question; (3) found unnecessary to address petitioner's argument regarding the alleged errors on the property record card; (4) concluded that the MTT must consider the sale price of the property; and (5) found the the cost approach the proper valuation methodology. Petitioner argued that the TCV should be corrected to $399,000, with a corresponding SEV and TV of $199,500.

The MTT, in its FOJ, found that the ALJ properly considered the evidence when issuing the POJ, and noted that "any errors purportedly committed by Respondent's BOR are not dispositive in the determination of this case" because "[t]hose purported errors, even if true, have no bearing upon the [MTT's] original jurisdiction or its obligation to determine the correct taxable status of the property for the year at issue[,]" citing MCL 205.731. The MTT noted, while petitioner claimed the cost approach more appropriate, the MTT defers to the fact-finder unless presented with evidence which "clearly demonstrate[d] that the POJ contain[ed] errors of fact or law." The MTT determined that petitioner failed to establish her alleged factual errors and agreed with the ALJ's analysis using the sale-comparison approach and not the cost approach. The MTT explained that the cost approach failed to best indicate the property's value because of the property's age and the unknown extent of the property's depreciation, especially in a case where petitioner argued the record card contained erroneous values. The MTT determined that petitioner failed to show good cause justifying modifying the POJ or granting a rehearing, and adopted the POJ as its final decision, including the POJ's finding that the property's final TCV equaled $515,000, and its final SEV and TV were $257,500.

## II. PRESERVATION AND STANDARD OF REVIEW

"Generally, issues regarding the decision of the [MTT] are preserved for review by this Court when they are raised, addressed, and decided by the [MTT]." *Empire Iron Mining Partnership v Tilden Twp*, 337 Mich App 579, 595; 977 NW2d 128 (2021). The record indicates that petitioner preserved her argument regarding whether the BOR's consideration of the property's sale price required reversal. Respondent argues that petitioner never raised the argument about an error in the MTT's determination that the BOR's errors were not dispositive, but the MTT stated that in the FOJ, not the POJ, and therefore, it was not something to which petitioner could respond. "[A] party also need not preserve an objection to 'a finding or decision' made by the trial court, MCR 2.517(A)(7)[.]" *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020). This issue is properly considered by this Court for appellate review.

Similarly, petitioner's argument that the FOJ should have considered respondent's perjury did not need to be preserved. *Id.* However, petitioner failed to directly assert this claim of error in her statement of questions presented. "Independent issues not raised in the statement of questions presented are not properly presented for appellate review." *Bouverette v Westinghouse*

*Electric Corp*, 245 Mich App 391, 404; 628 NW2d 86 (2001). Nevertheless, petitioner, acting *in propria persona*, is entitled to more leniency than an attorney. See, e.g., *Estelle v Gamble*, 429 US 97, 106-108; 97 S Ct 285; 50 L Ed 2d 251 (1976); *Hein v Hein*, 337 Mich App 109, 115; 972 NW2d 337 (2021). Because petitioner raised this argument before the MTT and given her *in propria persona* appeal, we will consider this issue preserved for appellate review.

"Unless there is fraud, this Court's review of MTT decisions is limited to determining whether the MTT erred in applying the law or adopted a wrong legal principle." *West Mich Annual Conference of the United Methodist Church v Grand Rapids*, 336 Mich App 132, 137; 969 NW2d 813 (2021) (quotation marks and citation omitted). "Issues of statutory interpretation are reviewed de novo." *Empire Iron Mining Partnership*, 337 Mich App at 586 (quotation marks and citations omitted). "Although agency interpretations of a statute are entitled to 'respectful consideration,' 'they are not binding on courts and cannot conflict with the plain meaning of the statute.' " *Id.* (citation omitted). "We deem the [MTT's] factual findings conclusive if they are supported by competent, material, and substantial evidence on the whole record." *Liberty Hill Housing Corp v Livonia*, 480 Mich 44, 49; 746 NW2d 282 (2008) (quotation marks and citations omitted).

## III. ANALYSIS

Petitioner argues that the MTT erred by not reversing the BOR's decision changing the property's SEV to exceed 50% of its TCV. We disagree.

MCL 211.27(1) in relevant part defines TCV as:

the usual selling price at the place where the property to which the term is applied is at the time of assessment, being the price that could be obtained for the property at private sale, and not at auction sale except as otherwise provided in this section, or at forced sale. . . .

\* \* \*

In determining the true cash value, the assessor shall also consider the advantages and disadvantages of location; quality of soil; zoning; existing use; . . . .

Under MCL 211.27a(1), pursuant to Const 1963, art 9 § 3, a property shall be assessed at 50% of its TCV.

"The [MTT] is under a duty to apply its expertise to the facts of a case in order to determine the appropriate method of arriving at the [TCV] of property, utilizing an approach that provides the most accurate valuation under the circumstances." *Great Lakes Div of Nat'l Steel Corp v Ecorse*, 227 Mich App 379, 389; 576 NW2d 667 (1998) (citations omitted). "[TCV] is synonymous with fair market value." *Id.* (citation omitted). "The burden of proof is on the petitioner to establish [TCV]." *Id.* Under MCL 205.737(3), the "assessing agency has the burden of proof in establishing the ratio of the average level of assessments in relation to true cash values in the assessment district and the equalization factor that was uniformly applied in the assessment district for the year in question." The MTT "has a duty to make its own, independent determination of [TCV]." *Great Lakes*, 227 Mich App at 389 (citation omitted). "The [MTT] is not bound to accept the parties' theories of valuation. It may accept one theory and reject the other, it may reject

both theories, or it may utilize a combination of both in arriving at its determination of [TCV]." *Id*. at 389-390 (citation omitted). The MTT reviews the BOR's assessment de novo. *Mich Props, LLC v Meridian Twp*, 491 Mich 518, 543; 817 NW2d 548 (2012).

"The rule in Michigan, as in many other states, is that the selling price of a particular piece of property is not conclusive as evidence of the value of that piece of property." *Antisdale v Galesburg*, 420 Mich 265, 278; 362 NW2d 632 (1984) (citations omitted). MCL 211.27(6) provides:

> Except as otherwise provided in subsection (7), the purchase price paid in a transfer of property is not the presumptive true cash value of the property transferred. In determining the true cash value of transferred property, an assessing officer shall assess that property using the same valuation method used to value all other property of that same classification in the assessing jurisdiction. As used in this subsection and subsection (7), "purchase price" means the total consideration agreed to in an arms-length transaction and not at a forced sale paid by the purchaser of the property, stated in dollars, whether or not paid in dollars.

In *Antisdale*, 420 Mich at 278-279, our Supreme Court explained:

> The Legislature has commanded that property be assessed as its "usual selling price". The most obvious deficiency in using the sales price of a piece of property as conclusive evidence of its value is that the ultimate sale price of the property, as a result of many factors, personal to the parties or otherwise, might not be its "usual" price. The market approach to value has the capacity to cure this deficiency because evidence of the sales prices of a number of comparable properties, if sufficiently similar, supports the conclusion that factors extrinsic to the properties have not entered into the value placed on the properties by the parties.

Therefore, while a property's sale price cannot be used alone as conclusive evidence of its TCV, the MTT may use the sales-comparison approach in analyzing the property's sale price. The sales-comparison approach derives the TCV as follows:

> To elaborate, under the sales-comparison approach, true cash value is derived by analyzing recent sales of similar properties, comparing those properties with the subject property, and adjusting the sales price of the comparable properties to reflect differences. The adjusted sales prices should fall within a range and allow the appraiser to estimate the true cash value of the subject property. Once ascertained, the true cash value of the subject property itself is not adjusted. [*Meadowlanes Ltd Dividend Housing Ass'n v Holland*, 437 Mich 473, 492; 473 NW2d 636 (1991) (emphasis omitted).]

Petitioner does not allege that the MTT erred in its de novo analysis of the property's TCV and SEV. Instead, petitioner argues that the MTT erred by failing to reverse the BOR's valuation. The record reflects that the MTT's de novo analysis resulted in a different value than the BOR. The MTT did not err by failing to reverse the BOR's valuation of the property because it conducted its own independent valuation which petitioner does not dispute on appeal.

Petitioner next argues that the MTT erred by determining that the BOR's errors were not dispositive of the case. We disagree.

As noted, the MTT reviews de novo the BOR's assessment. *Mich Props, LLC*, 491 Mich at 543. Further, "[t]he [MTT] is not bound to accept the parties' theories of valuation. It may accept one theory and reject the other, it may reject both theories, or it may utilize a combination of both in arriving at its determination of true cash value." *Great Lakes*, 227 Mich App at 389-390 (citation omitted). In this case, the MTT conducted its own analysis using a separate valuation theory and came to a different end result. There is nothing in the record indicating that the BOR's alleged errors influenced or impacted the MTT's determinations. The MTT did not err when it determined the BOR's alleged errors were not dispositive.

Petitioner argues that the MTT erred by failing to consider respondent's representative's alleged perjury. We disagree.

Petitioner contends that footnote 17 of the POJ establishes respondent's perjury:

> Respondent's representative testified that the [BOR] relied on other comparable sales in addition to Petitioner's appraisal report in its value determination, but this is not supported by Respondent's April 14, 2021 letter to Petitioner. Even assuming that such sales were considered, they likewise were not provided for the [MTT's] review.

Analysis of this footnote indicates that the MTT did not determine respondent's representative committed perjury, only that the testimony lacked evidentiary support and the other evidence the BOR allegedly considered was not provided to the MTT for review. The MTT did not consider the statement when conducting its independent analysis of the valuation of the property. Petitioner has provided no other evidence of perjury, let alone perjury which impacted the MTT's valuation of the property. The MTT, therefore, did not err by failing to consider any alleged perjury by respondent's representative.

Lastly, petitioner's argument regarding the State Tax Commission's (STC) duties conflates the STC with the MTT:

> The [MTT] has exclusive and original jurisdiction over proceedings involving direct review of a final decision, finding, ruling, determination, or order of an agency relating to assessment, valuation, rates, special assessments, allocation, or equalization, under the property tax laws of this state. The Legislature has vested the [MTT] with jurisdiction over matters previously heard by the [STC] as an appellate body. Thus, the [MTT] has jurisdiction to hear appeals from the decisions of the [STC]. [*Autodie, LLC v Grand Rapids*, 305 Mich App 423, 428; 852 NW2d 650 (2014) (quotation marks, citations, and emphasis omitted).]

Further, the STC is governed by the General Property Tax Act, MCL 211.146 *et seq*.; whereas, the MTT is governed by the Tax Tribunal Act, MCL 205.701 *et seq*. Petitioner appeals a decision of

the MTT, not the STC, and therefore, petitioner's alleged errors and violations of the STC's statutory requirements lack merit.

Affirmed.

/s/ Kristina Robinson Garrett
/s/ Colleen A. O'Brien
/s/ James Robert Redford